GREEN *v.* LION OIL COMPANY.

4-8880            220 S. W. 2d 409

Opinion delivered May 16, 1949.

*W. J. Smith,* for appellant.

*Davis & Allen* and *H. D. Dickens,* for appellee.

MINOR W. MILLWEE, Justice. The Workmen's Compensation Commission found that appellant, Glenn A. Green, sustained an accidental injury to his eyes which

arose out of and in the course of his employment by appellee, Lion Oil Company, in June, 1947. The commission denied appellant's claim for weekly compensation benefits because he received a salary from the State during the period of disability in excess of what his earnings would have been had he remained in appellee's employ, but ordered payment by appellee of necessary medical expenses incurred by appellant as a result of the injury. Appellee, a self-insurer under the Compensation Act, appealed to the circuit court which reversed and set aside the order of the commission on the ground that there was not sufficient competent evidence in the record to warrant the award for medical expenses. Appellant prosecutes this appeal from the circuit court judgment.

Appellant resigned his position as Publicity Director for the State of Arkansas and entered the employ of appellee as assistant advertising manager on June 15, 1947. At that time he had suffered occasionally for approximately two years from a slight conjunctivitis. A few days after he started working for appellee he received treatment from Dr. Raymond C. Cook of Little Rock and was fitted with glasses to correct the condition.

According to the testimony of appellant, his condition had materially improved on June 26, 1947, when he and a co-worker went to the fertilizer plant operated by appellee at El Dorado, Arkansas, to take some pictures to be used in company advertising. The fertilizer manufactured at the plant is known chemically as ammonium nitrate which is packed and distributed in pellet form in 100 pound sacks. In arranging a sack of the material for photographing, appellant worked with it with his bare hands for a period of two or three hours. It was a hot day and he perspired freely using his handkerchief repeatedly to dry his hands and face. He went directly from the plant to his hotel room where he first became conscious of irritation in his eyes.

His condition grew progressively worse and on July 1, 1947, he again consulted Dr. Cook who found appellant suffering from acute purulent conjunctivitis for

which treatment was administered. On July 2, 1947, corneal ulcers had developed and appellant underwent radical treatment for a two weeks period and was totally disabled for five weeks. He was discharged by Dr. Cook on August 5, 1947, with vision of 20-20 in both eyes and pupils back to normal.

Appellant resigned his position with appellee on June 30, 1947, and resumed his former position with the state on July 1, 1947. He received his regular salary from the state during the five weeks period of disability although he was unable to perform his duties during that time. The record does not indicate the exact date appellant filed his claim with the commission, but on July 16, 1947, appellee filed its report of intention to controvert the claim in which it is stated: "Reason for Controverting Claim. Deny that Glenn A. Green received the alleged injury while working for Lion Oil Company."

The effect of Dr. Cook's testimony is that appellant undoubtedly came in contact with something that resulted in a marked irritation of the eyes between the treatments of June 21 and July 1, 1947. It was his opinion that appellant's exposure to and contact with the ammonium nitrate aggravated the pre-existing subacute conjunctivitis and resulted in formation of the corneal ulcers and temporary total disability for five weeks.

The testimony of Dr. Cook was disputed by that of Dr. M. V. Russell who did not treat appellant, but testified as an expert on behalf of appellee. Dr. Russell stated that while ammonium nitrate would result in eye irritation, he did not believe that enough of the chemical could have been transmitted to appellant's eyes in the manner described to result in ulceration. He also stated that appellant's contact with a large amount of ammonium nitrate would have caused an ulcerated condition within 48 hours, if at all; and that since such condition did not set up until several days thereafter, it was his opinion that some systematic or other condition was the cause of the formation of the ulcers. On this point Dr. Cook stated that the period of the development

of the ulcers after exposure would depend on the amount of ammonium nitrate that got into the eyes of one already suffering from subacute conjunctivitis and that if the amount was small and in the form of a fine dust, it would set up an allergic infection which would take a few days for the ulcer to develop.

R. L. Payton, a chemical engineer and assistant supervisor of the nitrate plant, testified that he and other employees at the plant had gotten ammonium nitrate in their eyes on many occasions and that the normal reaction was an immediate stinging senstion which soon subsided. He also stated that if a large quantity of the chemical got in the eyes, it was necessary to wash the eyes to obtain relief, and that the company maintained places over the plant for that purpose. He would not attempt to say what the reaction would be on eyes already diseased.

Dr. M. D. Barnes, a research chemist employed by appellee, disagreed with Dr. Cook and other witnesses as to the chemical being an eye irritant. After a learned and extensive explanation of the chemical properties found in ammonium nitrate, he stated that similar properties were used in various eye medicines and that in his opinion appellant's trouble could not have been caused by the chemical. He concluded that a weak solution of the chemical would make a good eyewash and stated that he administered a one percent solution of ammonium nitrate to one of his eyes for three days prior to the giving of his testimony without harmful effect. His invitation for those present at the hearing to examine his eyes invoked the following testimony in response to questions by one of the commissioners: "Q. When did you do this, doctor? A. I did it this past week end, starting Friday night. Q. Is that the reason your eye is red now? A. (No response)." His work was confined to the laboratory and he did not know of the experiences of employees at the plant as related by Mr. Payton. He stated that these employees must have gotten more than a 1% solution of the chemical in their eyes.

The question for determination is whether there was sufficient competent evidence to support the commission's finding that appellant received an accidental injury to his eyes which arose out of and in the course of his employment. If the commission's finding that appellant sustained such an injury is supported by substantial evidence, the trial court erred in reversing and setting aside the award of the commission. It is not the province or duty of either the circuit court or this court on appeal to try *de novo* cases heard by the Workmen's Compensation Commission. Solid Steel Sissors Co. v. .Kennedy, 205 Ark. 958, 171 S. W. 2d 929.

It is also well settled that the circuit court on appeal from the commission and this court on appeal from the circuit court must give to the findings of fact by the commission the same force and effect as the verdict of a jury or of the circuit court sitting as a jury. Lundell v. Walker, 204 Ark. 871, 165 S. W. 2d 600; Sturgis Brothers v. Mays, 208 Ark. 1017, 188 S. W. 2d 629. In determining whether there is sufficient evidence to support the award, both the circuit court and this court on appeal must weigh the testimony in the strongest light in favor of the commission's findings. Hughes v. Tapley, Admr'x, 206 Ark. 739, 177 S. W. 2d 429. We have also adopted the rule stated by the California Court in Pacific Employers Ins. Co. v. Industrial Accident Commission, 19 Cal. 2d 622, 122 P. 2d 570, 141 A. L. R. 799, as follows: "Circumstantial evidence is sufficient to support an award of the commission, and it may be based upon the reasonable inferences that arise from the reasonable probabilities flowing from the evidence; neither absolute certainty nor demonstration is required." Herron Lumber Co. v. Neal, 205 Ark. 1093, 172 S. W. 2d 252; J. L. Williams & Sons, Inc. v. Moore, 206 Ark. 766, 177 S. W. 2d 761.

This court is also committed to the rule that an aggravation of a pre-existing diseased condition resulting in death or disability is compensable, if caused by an accidental injury that arises out of and in the course of employment. McGregor & Pickett v. Arrington, 206 Ark.

921, 175 S. W. 2d 210; Harding Glass Co. v. Albertson, 208 Ark. 866, 180 S. W. 2d 961.

In support of the judgment of the circuit court, appellee contends that appellant's own testimony conclusively shows that he did not get ammonium nitrate in his eyes because he stated that he felt the irritation to his eyes for the first time when he arrived at his hotel room from the plant, while the evidence shows that he would have experienced an instantaneous burning sensation while working with the chemical. It is also insisted that the commission gave unwarranted weight to the testimony of Dr. Cook and that the latter's conclusion as to the cause of the acute conjunctivitis which resulted in corneal ulcers on appellant's eyes was wholly conjectural.

The evidence is in conflict, but it was the province of the commission as the fact finding body to harmonize the various inconsistencies in the testimony. Appellant gave a reasonably clear history of having gotten the ammonium nitrate in his eyes which were already diseased by subacute conjunctivitis. This experience was followed by increasing pain and culminated in a severe and disabling condition of his eyes. The testimony of Dr. Cook that in his opinion the chemical caused or could have caused the disabling condition was not an unreasonable conclusion to be drawn from all the facts and circumstances. It is our conclusion that the evidence, when considered in its strongest light in favor of the commission's findings, was substantial and sufficient to support the award.

Appellee also argues that under § 11 of Act 319 of 1939, which was in effect at the time of the alleged injury, it had the right to select the physician for the treatment of injured employees and is under no obligation to reimburse appellant for the medical expenses which he has incurred. Appellee also insists that there was no proof of medical expenses nor statement thereof rendered the commission as required by this section of the compensation act.

The commission made an open award in appellant's favor for necessary medical expenses without determining the amount or reasonableness thereof. This procedure was not objected to by appellee at the hearing. There was in fact testimony as to the amount of Dr. Cook's charges. There was also evidence that appellee knew of the treatment of appellant by Dr. Cook at the time it filed notice of intention to controvert the claim on the sole ground that appellant did not receive the alleged injury while working for appellee. The proceedings before the commission were confined to the question whether appellant sustained an accidental injury arising out of and in the course of his employment. The issues of appellee's right to select the physician, the amount and reasonableness of medical expenses and the rendition of a statement of such expenses were not raised before the commission and may not be raised for the first time on this appeal. Murch-Jarvis Co., Inc. v. Townsend, 209 Ark. 956, 193 S. W. 2d 310.

It follows that the trial court erred in setting aside the award of the Compensation Commission. The judgment is, therefore, reversed and the cause remanded with directions to reinstate and affirm the findings and order of the commission.

Justice FRANK G. SMITH, not participating.