WILLIAMS *v.* GIFFORD-HILL & Co., INC.

5-1159                                            298 S. W. 2d 323

Opinion delivered February 11, 1957.

*R. D. Rouse;* and *Richardson & Cavanagh,* Lawton, Okla., for appellant.

*Shaver, Tackett, Jones & Lowe,* for appellee.

MINOR W. MILLWEE, Associate Justice. This is an appeal from a judgment of the Miller Circuit Court reversing and dismissing an award of the Workmen's Compensation Commission. The sole issue is the sufficiency of the evidence to sustain the Commission's finding that the accidental injury and death of Willie Williams arose out of and in the course of his employment with the appellee, Gifford-Hill & Company, Inc.

Appellee owns and operates a sand and gravel plant at Hoot, Arkansas, near Texarkana. Appellants are the widow and minor child, respectively, of Willie Williams, deceased, who was working at appellee's plant on July 24, 1955. The plant consists of several railroad tracks, a washing plant, a tunnel and a conveyor belt running from the washing plant to a filter plant where the cars of sand or gravel are made ready for shipment. On the date in question Williams and three other employees reported for work on the night shift which ran from 6:30 P. M. to 6:30 A. M. The duties of Williams required him to stay in the tunnel of the washing plant and feed the conveyor belt carrying gravel to the filter plant. After a car located beneath the filter plant was filled he was required to come up from the tunnel and help level the gravel therein. Mack Pierce, a fellow employee, operated a bulldozer in pushing the gravel

up to the tunnel where it passed through hoppers onto the conveyor belt.

About 8:15 P. M. it was discovered that gravel was not moving through the hoppers to the conveyor belt as it should. The formation of large mud balls made it necessary that a door in the tunnel be raised to permit the gravel to pass through. When Pierce went down to the tunnel to investigate he saw Williams standing either in a daze or asleep. After 30 to 45 seconds Williams aroused, opened the doors and restored proper operation of the conveyor belt. After the car being loaded at the filter plant was filled Williams went there to assist in the leveling process about 8:30 P. M. He complained of a headache and told Pierce he was going for some aspirin at a commissary or boarding house maintained on the premises by appellee several hundred feet northwest of the filter plant. After purchasing a box of aspirin and a Coca Cola at the commissary he returned to the filter plant a few minutes later but from a southerly direction where appellee's employees usually answered calls of nature in a wooded area on appellee's property. When he returned to the car at the filter plant he was not wearing his cap and E. W. Cain, his foreman, asked him where it was. Williams replied: ''I guess I left it out in the bushes,'' and left in that direction.

Williams had not returned about 10:00 P. M. when it became necessary to move loaded cars off and empties onto the loading track leading to the tunnel. Cain was operating the ''dinkey'' and Pierce was acting as switchman. When they began moving a string of empty cars on a spur track they heard Williams yell. They went to a point near the south end of the string of cars where they found Williams had been struck and run over by one of the cars. He had been dragged about 31 feet from the point where he was struck and died within a few minutes. His cap and vomitus were found near the point where the wheels of the car first struck him.

The track upon which Williams was struck was located south of the track leading to the filter plant which

is about 105 feet from the point where the body was found. While he had no specific duties to perform on this track, it was necessary that deceased cross it in order to reach the bushes where he went to get his cap and where appellee's employees customarily went to answer calls of nature. An officer who made an investigation of the accident examined the body and the vomitus and found no evidence of intoxication. Cain stated deceased had been gone about an hour before he was killed.

In awarding compensation on the foregoing facts, the Commission found: "There are certain inferences that can be drawn from the evidence. One inference is that deceased had answered a call of nature and had gone to the woods for such purpose and was on his way back to his place of work. Another inference is that deceased became ill and lay down by the railroad track, while yet another inference is that deceased had possibly gone to sleep by the track. It appears that no one will ever know for a certainty why deceased was where he was at the time of his accidental injury and death.

"We have conscientiously considered all of the evidence of record herein, and we are of the opinion that when reasonable inferences are drawn from all of the facts and circumstances surrounding the entire scope of deceased's employment, and those facts and inferences are viewed in the light most favorable to claimants by resolving all doubts in their favor, it must be found that deceased's accidental injury and death on the night of July 24, 1955 arose out of and during the course of his employment with Gifford-Hill & Company, Inc."

In our opinion there is sufficient competent evidence to support the Commission's conclusion that deceased's accidental injury and death arose out of and in the course of his employment. Our compensation statute covers every injury to an employee arising out of and in the course of his employment except those injuries caused by his intoxication or by his willful intention to bring about the injury or death of himself or another. (Ark. Stats., Secs. 81-1302 (d) and 81-1305). The word "employment," as used in the statute, does not have

reference alone to actual manual or physical labor, but to the whole period of time or sphere of activities, regardless of whether the employee is actually doing the thing he was employed to do. *Hunter* v. *Summerville,* 205 Ark. 463, 169 S. W. 2d 579. We have also said that circumstantial evidence is sufficient to support an award of the Commission, and it may be based upon the reasonable inferences that arise from the reasonable probabilities flowing from the evidence; and that neither absolute certainty nor demonstration is required. *Herron Lumber Co.* v. *Neal,* 205 Ark. 1093, 172 S. W. 2d 252. Under our settled rule the findings of fact by the Commission are, on appeal, given the same verity that would attach to a jury's verdict and will be sustained if supported by any substantial evidence.

The facts here are somewhat similar to those in *Cox Bros. Lumber Co.* v. *Jones,* 220 Ark. 431, 248 S. W. 2d 91. In that case a night watchman at a sawmill was permitted by his employer to cross railway tracks adjacent to the mill property for the purpose of making purchases for his evening meal at a nearby store. The Commission's disallowance of an award was reversed and we held there was no such deviation from the work as to take the watchman out of his course of employment where he had journeyed across the tracks to the store owners's home to procure food and was returning to the mill when he was struck and killed by a train. Also in *Tinsman Mfg. Co.* v. *Sparks,* 211 Ark. 554, 201 S. W. 2d 573, we approved the rule that acts of personal ministration are recognized as *incidents of the employment* and injuries sustained in the performance thereof are as well protected as the injuries on the main job when such acts are done with the consent or acquiescence of the employer. See also, 58 Am. Jur., Workmen's Compensation, Secs. 236 and 240; Larson, Workmen's Compensation Law, Secs. 21:00 & 21:53.

In the case at bar there is no evidence of intoxication and there is a *prima facie* presumption against suicide. Ark. Stats., Sec. 81-1324. It is certain that the deceased was ill and that his first mission to the commis-

sary and bushes was reasonably necessary for the relief of his illness and in accordance with the usual custom. His return to the bushes for his cap was made with the tacit consent of his foreman. He was killed during working hours on company property and his body was found at a place where he might properly have been in the performance of acts which, though personal, were nevertheless incidental to the employment. When all reasonable inferences that may be drawn from the circumstances are considered the Commission was justified in concluding that, upon his return for his cap, the deceased became seized by the illness and either unconsciously fell upon the tracks or unintentionally went to sleep on or near the tracks.

Under the rules of liberal construction accorded to an award made by the Commission, we hold the evidence substantial and sufficient to establish the fact that deceased's fatal injury arose out of and in the course of his employment. The judgment is accordingly reversed and the cause remanded with directions to reinstate the order of the Commission.