HERMAN WILSON LUMBER CO. ET AL v. LESTER HUGHES

5-4635                               431 S.W. 2d 487

Opinion Delivered September 16, 1968

*McMillan, McMillan & Turner* for appellants.

*Thomas D. Wynne Jr.,* and *Frank W. Wynne* for appellee.

JOHN A. FOGLEMAN, Justice.    Appellants allege error in the judgment of the trial court rendered January 11, 1968, reversing the Workmen's Compensation Commission order denying and dismissing the claim of appellee Lester Hughes against his employer, Herman Wilson Lumber Company.    The order was based upon a finding that the condition upon which Hughes based his claim was a disease known as aspergillus[1], a fungus

---

[1]We assume that this reference is to Aspergillosis which, according to 2 Gray's Attorneys' Textbook of Medicine, § 40.71, is an infection caused by the fungus Aspergillus fumigatus.

infection of the lung, which was neither caused nor aggravated by his employment. The trial court found that there was no substantial evidence to support the finding of the Commission. We disagree.

Hughes was employed by the employer-appellant from 1957 or 1958 to March 3, 1965. On that day, Hughes coughed and spit up blood while performing his duties for his employer at Leola. He claims that this occurred immediately after a log which he was maneuvering into position to load on a carriage for sawing, suddenly rolled back and jerked him down. He was examined immediately thereafter by Dr. Curtis Clark at Sheridan who made a tentative diagnosis of pulmonary tuberculosis and referred him to McRae Sanatorium. He was treated there until October 12, 1965 when he was discharged and referred to the University of Arkansas Medical Center for exploration for the possibility of carcinoma of the lung. Dr. Thomas Bell removed the upper lobe of Hughes' left lung. This doctor gave the diagnosis of the disease upon which the Commission based its finding. After leaving the hospital, Hughes consulted Dr. George D. Taylor who recommended his return to his job on March 28, 1966. Appellee stated that he returned for about one month, but found himself unable to continue.

In reviewing the evidence it must be given its strongest probative force in favor of the action of the Workmen's Compensation Commission. *Holland* v. *Malvern Sand & Gravel Co.,* 237 Ark. 635, 374 S.W. 2d 822. The findings of the Commission have the same force and effect as a jury verdict and cannot be disturbed if supported by any substantial evidence. *Easton* v. *H. Baker & Co.,* 226 Ark. 687, 292 S.W. 2d 257; *Williams* v. *Gifford-Hill & Co.,* 227 Ark. 340, 298 S.W. 2d 323; *Arkansas Best Freight Co.* v. *Shinn,* 235 Ark. 314, 357 S.W. 2d 661; *Burrow Construction Co.* v. *Langley,* 238 Ark. 992, 386 S.W. 2d 484. In order to justify a reversal of the Commission's decision, one appealing must show that the proof is so nearly undisputed that fair-minded

men could not reach the conclusion arrived at by the Commission. *Hall* v. *Pittman,* 235 Ark. 104, 357 S.W. 2d 263; *McCollum* v. *Rogers,* 238 Ark. 499, 382 S.W. 2d 892.

An examination of the record discloses the following which constitutes substantial support of the commission's action:

In 1957, before his employment by appellant-employer, appellee had consulted Dr. Tilley in Arkadelphia who sent him to the University of Arkansas Medical Center. His discharge summary showed that he came there with a sore throat and hemoptysis. Diagnosis was an infiltrating process of the left upper lobe of the lung and inactive tuberculosis. He was discharged in 1958. Apparently he had no difficulty until the occasion upon which he bases his claim.

Dr. Clark stated that x-rays taken by him indicated pulmonary tuberculosis. After a culture taken by him was positive, his diagnosis was pulmonary tuberculosis, moderately advanced, active. It was his opinion that appellee's tuberculosis and fungus lung condition were not caused or aggravated by his employment.

The report of Dr. J. V. Lambert, staff physician at McRae Memorial Sanatorium, showed that an x-ray taken on the date Hughes was admitted showed infiltration and fibrosis at the left apex. While an x-ray film taken one month later showed improvement, another taken in September 1965 showed no significant changes. Direct smears on March 11 and 15, 1965, showed positive and a culture on the latter date showed positive for "A F B". All other cultures and gastrics were negative. Discharge diagnosis was pulmonary tuberculosis, minimal, inactive and possible carcinoma of the lung. A progress record from the sanatorium revealed that a "P A" film of July 14, 1960 showed evidence that Hughes then had a disease of the left lung apex with questionable cavity and some infiltration along the left bronchial areas.

Dr. Thomas E. Bell testified, in substance: Appellee's lung trouble was caused by a fairly uncommon fungus infection which occurs more frequently in persons who have had tuberculosis in the past; the tests at the Medical Center showed no evidence of tuberculosis; the fungus could have been present as long as two or three years prior to the development of symptoms; a man's work or activity, in my opinion, would not cause or have any relation to the condition at all; while it is possible that a sudden strain could cause the blood vessel running through the infection to rupture, resulting in a spitting up of blood, just the disease process itself produces the same result; the bleeding is a symptom of the disease and not a disabling condition; if there is bleeding, the disabling condition already exists.

Dr. George D. Taylor stated that he first prescribed for Hughes December 6, 1965, and after several visits recommended that he return to work May 28, 1966. He also revealed that he had treated Hughes in the fall of 1964 when his nose had bled and he had coughed up blood. This doctor admitted that he had then suspected tuberculosis but did not make any test. Dr. Taylor did not know whether or not Hughes' disability or operation resulted from his job.

Perhaps the trial court fell into error by reason of its conclusion that statutory law requires that testimony must always be given a liberal construction in favor of the claimant. It is true that it is the duty of the Workmen's Compensation Commission to draw every legitimate inference possible in favor of a claimant and to give him the benefit of the doubt in factual situations. *Holland* v. *Malvern Sand & Gravel Co.*, 237 Ark. 635, 374 S.W. 2d 822; *Burrow Construction Co.* v. *Langley*, 238 Ark. 992, 386 S.W. 2d 484; *Simmons Nat'l. Bank* v. *Brown*, 210 Ark. 311, 195 S.W. 2d 539. But it is not the province or duty of either the circuit court or this court to make a de novo application of this rule on review. Both courts are required to view the evidence in

the light most favorable to the findings of the Commission and to give the testimony its strongest probative force in favor of the action of the full commission. *Green v. Lion Oil Co.,* 215 Ark. 305, 220 S.W. 2d 409; *McCollum v. Rogers,* 238 Ark. 499, 382 S.W. 2d 892; *Burrow Construction Co. v. Langley, supra.* The question is not whether the testimony would have supported a finding contrary to the one made, but whether it supports the finding which was made. *Campbell v. Athletic Mining & Smelting Co.,* 215 Ark. 773, 223 S.W. 2d 499.

The action of the Commission was taken more than sixty (60) days after the record of the Workmen's compensation Commission was filed in the circuit court, contrary to Ark. Stat. Ann. § 81-1325 (b) (Supp. 1967). For this reason, appellants contend that the trial court was without jurisdiction to reverse this action. On the other hand, appellee contends that the 1967 Amendment to the Act is unconstitutional. Inasmuch as this case can be disposed of without determining the constitutional question, it is our duty to do so. *County of Searcy v. Stephenson,* 244 Ark. 54, 424 S.W. 2d 369.

The judgment of the circuit court is reversed.