ELTON EUBANKS *v.* WHEELING PIPELINE, INC.

5-5327                                          461 S. W. 2d 937

Opinion delivered January 11, 1971

*Whetstone & Whetstone,* for appellant.

*Shackleford & Shackleford,* for appellee.

JOHN A. FOGLEMAN, Justice. The circuit court affirmed a unanimous holding of the Workman's Compensation Commission (which had affirmed a referee's finding) that appellant Elton Eubanks suffered no permanent disability as a result of a back injury arising out of and in the course of his employment as a truck driver by appellee Wheeling Pipeline, Inc. The commission found that appellant had degenerative disc disease from which he had suffered recurrent "flare ups," but that he had recovered without any rating of physical

impairment, and that claimant had failed to show disability as defined in the Workman's Compensation Act and had made no effort to work. In its finding the commission noted that medical evidence showed that claimant did not have any physical impairment and that his disease was not caused or "accelerated" by his injury, since he recovered from each flare-up without any permanent effects.

Although appellant asserts that there is no substantial evidence to support the commission's decision and that the commission acted without or in excess of its powers, his arguments are really based only upon the first contention. We agree with the circuit court that there was substantial evidence to support the commission's holding. Appellant actually advances a theory that opinions of physicians that he had suffered no permanent disability should have been disregarded by the commission because they expressed the opinion that Eubanks had no permanent disability in spite of the fact that he had a greater susceptibility to recurring disability to his back after his compensable injury on March 30, 1967.

Appellant testified that, after his injury, he found that he was unable to do any kind of work without his back bothering him. He said he found that his condition was easily aggravated whenever he returned to his job. He worked last on December 27, 1967, except for one day in April 1968. Other than on this day, he had not worked after his release by Dr. Ernest R. Hartmann, an orthopedic surgeon, on February 9, 1968. Eubanks excused his failure to return to work because he would not cross a picket line incidental to a strike against Wheeling at the time of his release and a layoff of employees was agreed upon by Wheeling and the union after the strike was settled on April 7, 1968. He reported to the employment office on April 9, 1968,[1] as available for any kind of employment and applied for unemployment compensation benefits.

---

[1]There is some inconsistency in the testimony as to whether this date or April 8 was correct.

After the injury Eubanks returned to his job on April 26, 1967. He worked until July 21, 1967, but then suffered disabling pain and stiffness in his back. He was unable to work until August 14, 1967, after he had been supplied with a brace. He left work again on November 25, 1967, when he awakened and found himself unable to straighten his body to an erect position. He again returned to work on December 10, 1967, but quit about December 27, 1967, when his condition seemed to be worse than ever. He had been treated by Dr. Paul G. Henley and by Dr. Hartmann, to whom Dr. Henley had referred him. After treatment, which included traction for a week, the latter physician released him to return to work. Eubanks received compensation for temporary partial benefits for all periods he was unable to work prior to February 9, 1968.

Eubanks attributed his recurring disability to aggravation of his condition principally because of vibration of the truck and his use of his left leg for clutching. He testified before the referee on May 7, 1968, that he still had a sore place in his back which was aggravated by any kind of physical activity. He also stated that, even when he reclined on a hard mattress supported by plywood at night, he felt a throbbing in his back, and was unable to sleep satisfactorily unless he lay on a pallet on the floor. He said that he worked on April 10, 1968,[2] for nine hours beginning at 6:00 p.m. but found that he was unable to continue because of soreness he felt as a result of the truck's bouncing and shaking.

In an April 5, 1967, report, Dr. Henley, to whom Eubanks said he was referred by his safety supervisor, stated that the injury would not result in permanent defect and that x-ray diagnosis showed minimal degenerative changes. In his final report dated September 14, 1967, he expressed the opinion that Eubanks was capable of doing the same work he did before the injury and that he had no permanent disability.

---

[2]Eubanks' discovery deposition was taken at El Dorado on this date.

Dr. Hartmann first saw appellant on July 25, 1967. He found a recurrent mild lumbosacral strain. He continued treatment and examinations until February 9, 1968, and said that there was then no symptomatology of the patient's back. He expressed the opinion that Eubanks had no permanent disability as a result of his injury. He did not feel that there were any limitations or restrictions of appellant's ability to perform his duties as a truck driver. On cross-examination, Dr. Hartmann admitted that he did not consider Eubanks as strong a candidate for truck driving when discharged by him as he was before the injury, that his back was not in as good condition as before and that he considered this condition permanent. Dr. Hartmann said that Eubanks was more likely to have a "flare up" after the injury. He attributed the "flare ups" suffered by Eubanks to normal wear and tear, but admitted that they could be occupational or attributable to the board on which he was sleeping, additional injuries, normal aging factors, arthritis or degeneration of discs. This physician gave no ratable permanent disability because Eubanks had a normal examination and no symptoms. He found no evidence of narrowing of spinal disc interspaces or degenerative disc disease of lumbar spine with minimal osteo-arthritic changes, as did Dr. Larry Mahon, but admitted that an injury of the type suffered by Eubanks would aggravate such a condition. He later expressed the opinion that degenerative disc disease would cause recurring episodes of backache, which would more likely indicate disease rather than injury as a cause.

Dr. Charles N. McKenzie, an orthopedic surgeon, examined Eubanks on July 24, 1968, apparently on reference by the Workman's Compensation Commission, and referred him to Dr. James Moore for an electromyographic study because of mild orthopedic irregularities. Dr. McKenzie made reports of his findings on July 26, 1968, and November 13, 1968. His diagnosis on the earlier date was "physiological changes of the lumbar spine." He then stated that if electromyographic findings were normal, it would be his opinion that Eubanks

had not sustained a significant injury. After he received an interpretation of Dr. Moore's examination, Dr. McKenzie confirmed his conditional statement of opinion. He testified that he found no ratable or traumatic disability resulting from the injury appellant described. He described the irregularities found as consistent with Eubanks' age and attributable to physiological aging. He thought changes in Eubanks' back antedated March 1967.

Dr. McKenzie felt that if a patient had pain sufficient to cause disability, he, as a physician, should be able to demonstrate its cause. He did not give any permanent disability rating unless he could demonstrate it objectively, and was of the opinion that there is no other rational way to rate disability. He further opined that a real disability that could not be medically demonstrated would be so insignificant that it would not prevent the patient from performing most anything he wanted to do. Before he would rate a stable person whose objective symptoms were restricted to motion or muscle spasm which has been relieved, as chronically disabled, he would first have to have seen four or more remissions or exacerbations. Then, he felt that medical standards would require a rating of only 5% permanent disability from recurrent lumbosacral strain. According to him, after these remissions and exacerbations, significant physiological changes could be demonstrated. He agreed that one with a chronic lumbar spine condition would be 100% disabled insofar as truck driving is concerned. Dr. McKenzie would not eliminate the possibility of a chronic disability of Eubanks based upon subsequent developments but found nothing upon which to base a finding of permanent disability at the time he testified. He, too, stated that the chances of a remission if Eubanks went back to driving a truck were greater than if he had not suffered the original trauma and that he would not recommend him to a prospective employer as a truck driver.

Dr. Moore found no objective symptoms when he examined Eubanks except for a muscular tenseness

which he said could have been either voluntary or involuntary.

Dr. Larry E. Mahon, an orthopedic surgeon, examined Eubanks on April 18, 1968, pursuant to appointment made by appellant's attorney. On August 1, 1968, he reported to appellant's counsel that he had found minimal disc space narrowing which he felt could be substantiated clinically, regardless of x-ray findings. He expressed the opinion that Eubanks had reached his maximum healing point when seen for initial examination and that his inability to work would be of long duration and, most likely, permanent. On April 24, 1968, Dr. Mahon had reported a diagnosis of degenerative disc disease of the lumbar spine with minimal osteoarthritic changes, which he felt were aggravated, but probably not caused, by the March 1967 injury. He rated appellant's permanent disability at 10%.

Appellant argues that, since it is the duty of the commission to give the claimant the benefit of every doubt, and to draw from the testimony inferences that will support an award rather than defeat it, we should hold that the medical testimony adverse to claimant is not substantial support for the commission's finding. This argument is based upon Dr. Hartmann's and Dr. McKenzie's basing their opinions on lack of objective symptoms, while admitting that recurrence of "flare ups" was more probable than before Eubanks' injury. Although appellant's statement of the law governing commission action is correct, on appeal the court must view the evidence in the light most favorable to the commission's findings, drawing all reasonable inferences in favor thereof, even though we might have reached a different result if we were the commission. *Wilson* v. *United Auto Workers Intern. Union,* 246 Ark. 1158, 441 S. W. 2d 475; *Wilson Lumber Co.* v. *Hughes,* 245 Ark. 168, 431 S. W. 2d 487. The only question is whether there is any substantial evidence to support the commission's finding. *Allied Telephone Co.* v. *Rhodes,* 248 Ark. 677, 454 S. W. 2d 93; *Voss* v. *Ward's Pulpwood Yark,* 248 Ark. 465, 452 S. W. 2d 629. In order

for us to say that the judgment is without substantial evidentiary support, we would have to say that there was no reasonable basis for the opinions of Drs. Hartmann and McKenzie that a rating of permanent disability in a case such as this could be based only upon objective findings, that the more probable cause of recurrences of Eubanks' condition was disease or physiological aging rather than injury, and that permanent disability could not be demonstrated. These are matters peculiarly within the realm of scientific knowledge. This being so, we cannot say as a matter of law that the testimony of the physicians was not substantial. In this connection, we note that Dr. Mahon only contradicted the findings of the other physicians on the basis of his finding evidence of narrowing of disc interspaces. His report does not indicate an opinion contrary to those of the other physicians as to the appropriate basis for determining permanent disability of one with appellant's history.

The burden was upon appellant to establish his claim for compensation before the commission. *Voss* v. *Ward's Pulpwood Yard,* supra. He had the burden here of demonstrating that fair-minded men could not reach the conclusion arrived at by the commission. *Wilson Lumber Co.* v. *Hughes,* 245 Ark. 168, 431 S. W. 2d 487. We cannot say he has done so, even though the testimony might have supported a contrary result.

The judgment is affirmed.