BIBLER BROS. LUMBER CO. AND EMPLOYERS MUTUAL LIABILITY INSURANCE CO. v.
ALBERT B. ALLEN

5-5761                                   474 S.W. 2d 116

Opinion delivered December 13, 1971
[Rehearing denied January 17, 1972.]

*Harper, Young & Smith,* for appellants.

*James K. Young,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellee unsuccessfully contended before the Workmen's Compensation Com-

mission that he was permanently and totally disabled by a strangulated epigastric hernia and a back injury, both resulting from, or aggravated by, a fall arising out of and in the course of his employment. The commission found that appellee failed to meet two of the five statutory requirements to establish a claim for hernia, set out in Ark. Stat. Ann. § 81-1313(e) (Repl. 1960), and that appellee had not shown by a preponderance of the evidence that either injury arose out of and in the course of his employment. The commission specifically found that appellee was not worthy of belief. The commission then found that claimant had failed to show that his hernia immediately followed as a result of sudden effort, severe strain, or application of force to his abdominal wall or that such pain caused the employee to cease work immediately. On appeal the circuit court found that a reasonable man could only come to the conclusion that appellee was injured as a result of a fall or of lifting lumber and that appellee did no work thereafter. We reverse because we find substantial evidence to support the findings of the commission.

Appellant relies upon the following well-established rules[1] governing workmen's compensation cases:

> In reviewing the evidence it must be given its strongest probative force in favor of the action of the Workmen's Compensation Commission. The findings of the Commission have the same force and effort as a jury verdict and cannot be disturbed if supported by any substantial evidence. In order to justify a reversal of the Commission's decision, one appealing must show that the proof is so nearly undisputed that fairminded men could not reach the conclusion arrived at by the Commission.

> It is true that it is the duty of the Workmen's Compensation Commission to draw every legitimate inference possible in favor of a claimant and to give him the benefit of the doubt in factual situa-

---

[1]Citations omitted.

tions. But it is not the province or duty of either the circuit court or this court to make a de novo application of this rule on review. Both courts are required to view the evidence in the light most favorable to the findings of the Commission and to give the testimony its strongest probative force in favor of the action of the full commission. *Wilson Lumber Company* v. *Hughes,* 245 Ark. 168, 431 S. W. 2d 487;

where fair-minded men might honestly differ as to the conclusion to be drawn from facts, either controverted or uncontroverted, the drawing of inferences and reaching of conclusions are for the commission, not the court. *International Paper Co.* v. *Tidwell,* 250 Ark. ___ (May 10, 1971), 466 S. W. 2d 488;

the question presented * * * is one of credibility and, thus, a matter within the exclusive province of the commission. *Dacus Casket Co.* v. *Hardy,* 250 Ark. ___ (June 7, 1971), 467 S. W. 2d 713;

the burden was on the claimant to show that the injury arose in the course of the employment and grew out of or resulted from the employment. The findings of the Workmen's Compensation Commission have the same binding force, effect and verity as the verdict of a jury and are treated in this court in the same manner as a jury verdict. In doing so we must accept that view of the facts which is the most favorable to the commission's findings. We must also keep in mind that the commission must determine the extent to which credit is given to testimony, even when it is undisputed. *Wilson* v. *U. A. W.,* 246 Ark. 1158, 441 S. W. 2d 475.

The commission determined that appellee was unworthy of belief, but we find, without regard to his testimony, that reasonable men could come to the conclusion reached by the commission.

There was testimony tending to show that:

Appellee was a night watchman at a mill operated by appellant. He said that he cleaned up 'the mill and punched the clocks. He claimed to have been injured by a fall or by lifting while about his duties in the early morning hours of Friday, March 14, 1969, the last day he worked for appellant. The next night he was unable to work and on Saturday morning he went to his place of employment and reported his condition to Glen and James Bibler, owners of appellant. Allen did not tell them that he had been hurt. He only reported that a rupture or something that he had had in his stomach for years was bothering him. Glen Bibler had known that Allen had this trouble previously and that the rupture swelled up every once in a while. Allen had shown Glen Bibler a knot or swelling on his stomach on previous occasions, and it looked about the same when Allen showed it to his employers on this visit. Allen did not mention any back injury to them.

Allen attended church services on Thursday, March 13. Appellee's 16-year-old niece, Caffie Allen, thereafter accompanied him on his work that night. She had previously noticed a bulge or swollen knot in the area of his stomach above the navel, and her uncle had frequently complained of it on many previous occasions when she accompanied him as he walked around the mill punching clocks. She had also heard him complain of his back. Allen asked her to go with him to his job whenever he was sick or hurting or when he had been awake all day and was sleepy.

Allen had once told James Franklin Martin, a fellow employee of appellant, of a hard place on his stomach.

Dr. W. H. Lane, Jr., had treated appellee on several occasions. He found that Allen had an epigastric hernia on March 31, 1952, when the patient gave a history of it which dated back to 1946. This doctor then advised surgery, because he felt Allen could not otherwise continue to function as a laborer without trouble, and told Allen that the hernia would get worse, rather than better. Allen returned to him with the same problem in November 1954 and February 1959. This physician treated him in April 1962 for a right lumbosacral ligament strain, which was disabling for several weeks. This doctor was of the opinion that work consisting of lifting or straining would cause the discomfort and pain related to Allen's hernia.

After Allen's visit to his employers, he was first seen by Dr. Robert M. Franklin of the Millard-Henry Clinic at Russellville on the same day. No complaint about any back pain was made by Allen to this physician until the stitches from his hernia repair were being removed on March 24. Then Allen said that he had experienced intermittent back trouble for a long time. He did not, in any conversation with this doctor, relate his back problems to his alleged injury on March 14. In Dr. Franklin's opinion, it was possible for Allen's hernia to have become strangulated without regard to his activities at the time and acute pain from the strangulation could have caused his alleged fall, rather than having resulted from it. According to Franklin, there is no medical evidence that a fall or any kind of trauma will cause a hernia to strangulate. He felt that one with pain in the back and from a hernia, recurring over a long period of time, could become accustomed to it and adjust his activities accordingly.

Allen was referred to Dr. Bachman of the same clinic by Dr. Franklin on the same day. Dr. Bachman's diagnosis was that Allen had either an incarcerated or a strangulated epigastric hernia. He immediately performed surgery, and found the hernia to be strangulated. He had no way of know-

ing whether the hernia was fresh or preexisting. According to Bachman, it was possible for this hernia to have become strangulated either with trauma or with any activity on Allen's part. Allen told this surgeon that he had experienced back pain for a long time. Allen did not then relate his back problems to his alleged fall. In Dr. Bachman's opinion, if Allen began experiencing pain from the hernia immediately after his fall, the strangulation could have occurred an hour earlier.

Dr. Millard examined Allen on April 8, and found a herniated intervertebral disc with right sciatica. Allen then told this physician of his alleged fall, but had given a history of previous back trouble as much as 15 years earlier. This physician said that the disc problem could have existed since 1962 and that he had no way of knowing when it occurred or how long it had existed. In his opinion, one who had previous back problems could herniate a disc by such a simple movement as getting out of bed and an epigastric hernia could become strangulated by reason of anything causing increased intra-abdominal pressure such as standing up or getting out of a church pew.

In view of appellee's burden of showing that his disability was the result of an accidental injury arising out of or in the course of his employment, we cannot say that the Workmen's Compensation Commission findings that appellee's disability did not result from any work-connected injury and that the hernia did not immediately follow as a result of sudden effort, severe strain or the application of force to the abdominal wall did not have substantial evidentiary support. Appellee makes a forceful argument based upon other evidence in the case and draws other inferences which might well sustain a finding in his favor by the commission. The test on appeal, however, is not whether the evidence would have supported a result contrary to that reached by the commission. It is whether there is any substantial evidence to support the result reached. *Wilson Lumber*

*Co.* v. *Hughes,* supra. On the basis of this test, the judgment of the circuit court is reversed.