# BROWER MANUFACTURING COMPANY, BROWER BETTER-BUILT, AND WESTERN INSURANCE COMPANY *v.* DICKY Wayne WILLIS AND RODNEY WHITE

5-5907

480 S.W. 2d 950

Opinion delivered June 5, 1972

*Young & Patton,* for appellants.

*Mobley & Smith,* for appellees.

JOHN A. FOGLEMAN, Justice. Dickey Wayne Willis was employed by Rodney White in the construction of a chicken house and the installation of feeding equipment manufactured by Brower Manufacturing Company for O. J. Robison, a poultry farmer. Willis suffered an injury compensable under the Workmen's Compensation Act while engaged in the installation of the Brower equipment. The Workmen's Compensation Commission affirmed a referee's opinion finding that White was a subcontractor of Brower in the construction and installation work on which Willis was employed. Since White was uninsured the award in favor of Willis was against Brower. The circuit court affirmed the award. The only question on appeal is whether there is substantial evidence to support the finding that White was a subcontractor of Brower Manufacturing Company. We find that there was.

Virtually all of the testimony on the subject was given by White. His statements were not substantially contradicted. He testified that his association with Brower originated in March, 1969, when he was employed as a sales representative for the company by Jason Cupp, its sales manager. There was no written contract. White was furnished calling cards, identifying him as the company's sales representative. He was to be compensated by commissions, which varied depending on whether the sale was made to a distributor, a jobber or a dealer. He was assigned a territory, but he was often directed by his immediate superior, Cupp, to go into different areas and call on different people. He often traveled with Cupp.

White made a sale of Brower equipment to O. J. Robison through Plainview Feed Store, a Brower distributor, but Cupp called and requested White to permit the shipment to be made to White because it would be difficult to get credit for the feed store approved. White agreed to this, but the equipment was actually shipped to

Joe Wayne Smith, a brother-in-law of Robison, who resided in Plainview, so that someone would be available to accept it and to direct it to the place it was to be installed. Smith was billed for the equipment at first, but the company later billed White.

Neither Brower nor White had a warehouse in the area. For this reason, and because of the competitive nature of the business, White and Cupp conceived the idea of offering a turn-key job, i.e., construction of chicken houses and installation of equipment as a package, for certain customers. White said that Cupp insisted on this approach. The sale to Robison was made on the basis of a contract signed by Robison and White only. It contained no mention of Brower as a party to the transaction, but did call for specified equipment. White said that this was the first such order. Soon thereafter, White received a letter of congratulations from Fenton Thompson, the president of Brower. This letter concluded with the remark, "Certainly hope there will be more installations like this." White said that he had been encouraged by both Thompson and Cupp to arrange this type of sale and that Thompson had full knowledge of the package deal. Robison paid White the full purchase price for the equipment. Brower sued White for the purchase price, apparently because White had claimed that he was entitled to $2,800 compensation for installation of the equipment. White testified that Cupp had agreed at the time of the contract to pay him $2,600 to $2,800 for installing the equipment. Settlement was made between Brower and White just before the hearing on the Willis claim by the payment by White of $4,000 on the $6,800 purchase price of the equipment.

William Green, secretary and comptroller for Brower, was the only company official to testify in the case. He stated that he was aware that White was constructing the houses. He said that White was to pay Brower for the equipment and that the company had no control over the manner and means by which the construction was done or installation made, but if White had installed the equipment improperly, the company would have in-

sisted upon correction in order to protect the company name. A repairman would have been sent by the company, if necessary. He denied knowledge of any oral contract between Cupp and White.

It was the duty of the commission to draw every legitimate inference possible in favor of the claimant and to give him the benefit of the doubt in making the factual determination. *Herman Wilson Lumber Co.* v. *Hughes,* 245 Ark. 168, 431 S.W. 2d 487. Neither Thompson nor Cupp, either of whom was in position to contradict White's testimony if it was not true, appeared as a witness. No explanation for their absence is offered. As triers of the facts the referee and the commission could properly draw the inference that the testimony of both these witnesses would have been unfavorable to appellants. *Arkansas State Highway Comm.* v. *Phillips,* 252 Ark. 206, 478 S.W. 2d 27. The drawing of inferences, however was for the commission and not the courts. *International Paper Co.* v. *Tidwell,* 250 Ark. 623, 466 S.W. 2d 488.

There is little room for doubt that Brower is a "Contractor" under Ark. Stat. Ann. § 81-1306 (Repl. 1960), if indeed it did contract with Robison to perform substantial services in connection with the sale of its feeding equipment and contracted with White to fulfill this obligation. *Brothers* v. *Dierks Lumber & Coal Co.,* 217 Ark. 632, 232 S.W. 2d 646; *Lofton* v. *Bryan* (on rehearing), 237 Ark. 642, 375 S.W. 2d 221. When the testimony is viewed in the light most favorable to appellees with all reasonable inferences drawn in their favor, we cannot say that reasonable minds could not conclude that White entered into the contract with Robison to perform substantial services to the purchaser on behalf of Brower by installing its equipment, and that Brower agreed to compensate White for these services. That being so, the evidence to support the commission's finding was substantial, even though we might have reached a different conclusion if we sat as the commission or heard the case de novo. See *Harding Glass Co.* v. *Moore,* 230 Ark. 796, 327 S.W. 2d 8.

The commission made a fact finding upon a close question of fact by resolving all inferences against appellants and by giving the evidence the most liberal construction possible in favor of the claimant. The question is not whether the testimony would have supported a finding contrary to the one made, but whether it is substantial in support of the one made. Since we cannot say that reasonable minds could not reach the commission's conclusion from the evidence, that evidence was substantial. *Wilson* v. *United Auto Workers*, 246 Ark. 1158, 441 S.W. 2d 475; *Herman Wilson Lumber Co.* v. *Hughes,* supra.

The judgment is affirmed.