## MARY E. WILLIAMS *v.* ARKANSAS NURSING HOME

73-197                                    503 S.W. 2d 474

Opinion delivered January 14, 1974

*Dodrill & Bethea,* for appellant.

*Lasley, Sharp, Haley, Young & Boswell, P.A.,* for appellee Arkansas Nursing Home.

*Wright, Lindsey & Jennings,* for appellee Commercial Standard Insurance Company.

J. FRED JONES, Justice. Mary E. Williams filed a claim for workmen's compensation benefits and her claim was denied by the Commission. The denial was affirmed by the circuit court. On appeal to this court Mrs. Williams contends that there was no substantial evidence to sustain the Commission's denial of her claim and that is the only question now before us.

It is apparent from the record that Mrs. Williams had been employed as a practical nurse at the Arkansas Nursing Home for about eight years and was 59 years of age on February 22, 1970, when her alleged injury occurred. Mrs. Williams testified that on February 22, 1970, she was helping to lift a patient at the nursing home and she experienced a sharp pain in the small of her back. She said the pain ran down her leg. She said she went to Dr. Price, a chiropractor; that after the first adjustment she felt better and concluded that she could return to work and did return to work on May 10, 1970. Mrs. Williams said she continued to work until May 14 when she had to quit work because of her inability to bear weight on her leg. She said she called Dr. Cornett who referred her to Dr. Ashley Ross. She said she was seen by Dr. Ashley Ross and was referred by him to the orthopedic clinic of the University of Arkansas Medical Center. She said that she had previously injured her back while lifting another patient in November, 1969, and that her back continued to bother her from that injury up until her injury on February 22, 1970. She said an injury report was made out by the supervisor at the hospital on the November, 1969, injury but not on the February, 1970, injury. She stated, however, that an accident form was filled out in July, 1970, by the hospital supervisor, Mrs. Keathley, directed to Colonial Life and Accident Insurance Company setting out the claim for injury on February 22, 1970. She testified that she was seen regularly by Dr. Price from some time in April, 1970, through November, 1970; that she quit going to him for chiropractic adjustments because she was unable to pay for his services.

Dr. Toney B. Price testified that he first saw Mrs. Williams on April 27, 1970, at which time Mrs. Williams complained of severe pain in the lower back and right leg which she attributed to lifting a patient at the Arkansas Nursing Home on February 22, 1970. He testified that he treated Mrs. Williams from April 27, 1970, until November 2, 1970, at which time she quit coming to see him, and at which time she owed a clinical bill of $552. He said that Mrs. Williams did not mention a back injury in 1969 but denied any previous injury. He said he diagnosed Mrs. Williams' condition as subluxation of the 4th and 5th lumbar vertebrae; that in his opinion the condition was not the result of an old injury but could be attributed to lifting the patient on February 22, 1970.

Several medical reports were submitted in evidence. Under date of November 23, 1971, Dr. Price reported that when he first saw Mrs. Williams on April 27, 1970, she was complaining of severe pain in the lower back, right groin and thigh which she attributed to lifting a patient in the course of her employment in 1970. Dr. Price reported that when he first saw Mrs. Williams, she was walking on crutches with a severe limp and inability to bear any weight on her right leg. He said his examination revealed a subluxation of the 4th and 5th lumbar vertebrae with nerve pressure at these points, muscle spasm of the erectorspinae muscles bi-laterally and diminished patella reflex of the right knee. He reported that after chiropractic adjustments Mrs. Williams obtained some relief and was able to walk without crutches, but was unable to resume her regular duties when last seen on November 2, 1970. He reported that he again examined Mrs. Williams on November 16, 1971, and found no change in her condition.

Dr. Ashley S. Ross reported he first saw and examined Mrs. Williams on March 2, 1970, at the request of Dr. James K. Cornett, her family physician. He said she was complaining of right hip and right leg pain. He stated that Mrs. Williams advised him she noticed the onset of her right hip and right leg pain while working at the Arkansas Nursing Home approximately five or six days before he saw her; that she stated the pain started in the groin area, but at the time he saw her, the greater portion of the pain was laterally around the trochanteric area and down the right lateral thigh with continued pain in the groin area. He said that upon examination there

was marked tenderness of the trochanteric bursa area and his diagnosis was "right trochanteric bursitis" as well as a tentative diagnosis of bursitis around the right hip joint.

Dr. Ross reported that Mrs. Williams returned on two subsequent visits and was given injections and also prescribed oral medication, but was still complaining of pain in the right groin and the right hip when last seen by him on March 17, 1970, at which time he referred her to Dr. Woodbridge Morris for further diagnostic studies. He said that x-rays of the pelvis and hip joint and sacro-iliac joints did not reveal abnormalities either in the bone or joint structures. His final diagnosis was stated in his opinion as follows:

> "Mrs. Mary Williams had a right trochanteric bursitis which responded fairly well to medication and injections. She had pain in the right groin which was not diagnosed and was most probably due to some type of pelvic pathology.

> She was referred to Dr. Woodbridge Morris for further diagnostic studies."

Drs. A. Zand and Georgell Chambers of the University of Arkansas Medical Center Orthopedic Clinic, reported under date of March 24, 1970, that Mrs. Williams was referred to them by Dr. Ashley Ross for a complete physical and laboratory workup. Their report recites a history of a ruptured kidney on the right side which was operated about 16 years ago, also ovarian cyst when 18 years of age which was removed; appendicitis and a cystic lesion which was removed 10 years ago. They reported no limitation in the right hip motion except in certain position when the pain "can catch her." These doctors reported they would like to see Mrs. Williams again in about a week for further laboratory examinations and Mrs. Williams was advised to use crutches. Under date of March 31, 1970, Drs. Duncan and Chambers reported that the crutches with nonweight bearing on the right completely relieved the pain or symptoms, but that Mrs. Williams reported that when she failed to use the crutches she continued to have some pain in the area of the adductors on the right, which the doctors concluded might be due to adductor strain.

On April 14, 1970, Dr. Duncan reported that he had been following Mrs. Williams' progress as to her complaints of tenderness and pain in the adductor region of the right leg, but that on his April 14 examination, she had tenderness in the lower abdomen more marked on the right side just lateral to the midline, and was also tender in the right perineal area with greatest tenderness in the perineum and in the lower abdomen. He recommended a complete gynecological examination by the General Surgery Clinic.

Under date of May 31, 1972, Dr. Charles N. McKenzie reported that he examined Mrs. Williams on that date. He found the Lasegue's signs negative but found that Mrs. Williams did have pain in her right thigh. He found tenderness in the femoral triangle and along the adductor origin. He found the peripheral pulse depressed with a stocking or sock-like decreased sensation about the right ankle and foot. He found some x-ray abnormalities in the thoracic or dorsal spine, but as to the right femur and lumbar spine, he reported as follows:

"AP and lateral views of the right femur do not show any significant abnormalities.

The AP view of the lumbar spine reveals alignment is good. The sacroiliac joints are well preserved. There are metallic sutures in the region of the right kidney.

The lateral view of the lumbar spine reveals a slightly exaggerated lordotic curve. The intervertebral disc spaces are well preserved. The vetebral bodies are well preserved. There is some very minimal anterior at the L5-S1 level. She does have a moderate degree of calcification which appears to be in the region of the lower abdominal aorta and into the common iliac vessels.

The right and left oblique views do not show any significant over-riding of the facets nor any particular increased sclerosis about the border of the facets."

Under the heading of "Diagnoses" Dr. McKenzie reports as follows:

"(1) Osteoporosis, rather advanced.

(2) Old compression deformity, T6, with residual mild kyphoscoliosis. (With the history she describes, I do not feel this was incurred with the episode she describes, since her symptoms were not in this area at this time and there is no localized tenderness in this area.)
(3) Status, post-operative, repair (R) kidney; partial hysterectomy.
(4) Hypercholesterolemia."

Dr. McKenzie concluded his report as follows:

"This patient has some symptoms which are rather acute and appear to be valid complaints and I am most suspicious of whether or not she may have a small femoral or internal obturator tear with her symptoms being along the course of the femoral triangle and along the obturator nerve.

This patient's osteoporosis certainly could contribute to her pain in that senile osteoporosis in itself may be painful.

I am not able to demonstrate any instability of the sacroiliac joints of symphysis pubis.

In view of the fact also that the femoral pulses are not very well palpated and I am not able to demonstrate the pulses about the ankle, I would feel at this time that an evaluation by a general surgeon who is also familiar with vascular testing would be in order to make sure this patient has not sustained a nernia [sic] in one of the areas described."

There is substantial evidence in the record before us that Mrs. Williams does have some disability in connection with the use of her right leg. The question before the Commission was whether the pain and disability suffered by Mrs. Williams were caused by an accidental injury sustained to her back while she was employed at the Arkansas Nursing Home. We agree with the appellant's argument that reasonable doubts entertained by the Commission should be resolved in favor of Mrs. Williams, but the question before the circuit court, and this court on appeal, is whether there was any substantial evidence to sustain the Commission's finding that Mrs. Williams'

disability was not caused by an accidental back injury sustained in the course of her employment by the Arkansas Nursing Home. We conclude that there is substantial evidence in the record to support the Commission's finding.

It goes without saying that the burden was on Mrs. Williams to prove her disability was caused by the injury she says she sustained while employed at the nursing home. Mrs. Williams was the only one who testified as to an accidental injury, but she testified that she did feel pain in her back as she helped lift a patient on February 22, 1970, and that the pain persisted until she was examined by Dr. Price on April 27, 1970. Dr. Price was of the opinion that Mrs. Williams had a subluxation of the L-4 and L-5 vertebrae resulting in her disability and attributable to the injury as testified by her. Had this been the only evidence in the record, we could easily say there was no substantial evidence to sustain a Commission finding that such accident did not occur or that such disability did not result. But to reach such conclusion on the record before us, would require us to invade the province of the Commission and say the Commission erred in not accepting Dr. Price's diagnosis and medical opinion in preference to the diagnoses and opinions of Drs. Cornett, Ross, Zand, Morris, Chambers, Duncan and McKenzie.

This appeal does not present the question of whether there was substantial evidence that would have sustained the Commission in different findings than those made, but the question on appeal is whether there was any substantial evidence to support the finding the Commission did make. *Brower Mfg. Co.* v. *Willis,* 252 Ark. 755, 480 S.W. 2d 950; *Wilson Lbr. Co.* v. *Hughes,* 245 Ark. 168, 431 S.W. 2d 487. The Commission had a perfect right, as a jury would have had, to accept the medical diagnoses and opinions of Drs. Ross and McKenzie to the effect that Mrs. Williams' difficulties in her right leg are due to bursitis as opinioned by Dr. Ross, or to the osteoporosis and circulatory complications as indicated by Dr. McKenzie.

The judgment is affirmed.

HARRIS, C.J., not participating.