THELMA JEANNE MAYNER *v.* FLYER GARMENT COMPANY ET AL

5-5357                                                   459 S. W. 2d 413

Opinion delivered November 9, 1970

*Jeta Taylor* and *Franklin Wilder,* for appellant.

*Warner, Warner, Ragan & Smith,* for appellees.

LYLE BROWN, Justice. The Workmen's Compensation Commission ruled that appellant, Thelma Jeanne Mayner, failed to establish that her alleged injuries arose out of the course of her employment with Flyer Garment Company. The circuit court affirmed. For reversal appellant contends (1) that there was no substantial evidence to warrant the denial of compensation, and (2) that the commission acted in excess of its powers.

Flyer Garment Company, engaged in the manufacture of wearing apparel, occupies a single building in Ft. Smith. Most of the approximately seventy women employees work on the first floor. There is a "cutting room" upstairs in which five of the women work, and that is where claimant, Mrs. Mayner, was employed. She testified that she came down the stairs at quitting time; that the stairs were littered with patterns and materials; and that she slipped on the debris and fell down the last four steps, landing on the first floor. She complained of injuries to her shoulder, right arm, and "most of the time my hand is asleep." Mrs. Clara Marts, who also resides at Ozark, explained that she happened to come to the building to apply for a job; that she heard a "thump" and saw appellant land on the floor; and that she assisted appellant to her feet.

There were other circumstances produced by appellant and which might be said to corroborate her contention that a fall occurred. (1) She reported the incident to the plant manager within minutes; (2) she related the fall to another worker shortly thereafter; and (3) the following day she went to the doctor, reported the incident, and was hospitalized overnight. Additionally, the doctor corroborated the visit. (He did not observe any outward evidence of injury at that time but at a later date observed a bruised spot on her lower left side.)

We turn now to the evidence which caused the commission to conclude in effect that the fall was not established. Howard Campbell has been plant manager since 1946. He testified that five employees regularly come

down the stairs from the cutting room at quitting time. The time clock is about thirty feet from the bottom of the stairs on the first floor and Campbell said that all employees come to that point at quitting time. He testified that he was stationed downstairs when the quitting bell rang and that he was in such position that he could have seen or heard the fall had it occurred; and that he neither heard nor saw any unusual occurrence. He further asserted that no person other than claimant mentioned such incident to him.

Reva Redden was one of the five workers in the upstairs cutting room. She testified that she followed appellant down the stairs and only a short distance behind, stating that she and appellant arrived at the punch clock at approximately the same time. She said she witnessed no fall, at the same time conceding that she did not keep an eye on appellant at all times; nevertheless, the substance of her testimony was that had there been a fall she could and would have seen it. This witness was also questioned about the presence of witness Clara Marts at the scene. The witness said she did not see Mrs. Marts, and believed she would have seen her had she been present.

Another worker in the upstairs cutting room was Barbara Mixon. She testified that on the day in question she preceded appellant down the stairs and that these two workers arrived at the punch clock at about the same time. The witness asserted that she did not see or hear appellant fall.

A layout of the first floor was introduced by agreement. It corroborates the commission's conclusion that it would have been extremely difficult for appellant's witness, Mrs. Marts, to have eyewitnessed a fall down the stairs. Her view could well have been obstructed by a number of tables, a rest room, and the stair enclosure itself. The plat also reveals that a stranger entering the building seeking employment would have to pass by the front office and the manager's office before ever reaching the working area. Of course the logical stop for one seeking work would be at one of the offices.

Mrs. Marts conceded that she did not talk to anyone, after she entered the building, about the possibility of a job. Howard Campbell said at the time of Mrs. Marts alleged entry he was standing in a position from where he would have recognized a stranger entering the building, and that he saw none.

The commission, in its written findings, pointed up several instances which led it to conclude that "claimant's testimony in this case is anything but candid." We have examined those inconsistencies and suffice it to say that the conclusion cannot be said to be illogical.

Viewing the facts and circumstances in the light most favorable to the commission's findings, as we must, and using the long established substantial evidence rule, we hold that appellant's first point is without merit.

To support her second contention for reversal—that the commission acted in excess of its powers—appellant actually combines these arguments. We shall treat them singularly.

First, appellant suggests substantial irregularity in the oral argument proceedings. That argument was heard by Commissioners Woolsey and Holmes. Commissioner Mays was not present because of illness. Chairman Woolsey subsequently disqualified in the case and it was decided by Commissioner Holmes and Mays. Thus it is true that of the two commissioners who decided the case, only one of them heard the oral argument. There was no objections made to Mr. Mays' absence from oral argument, nor was it suggested that the argument be rescheduled for a time when he could be present. Further, we are cited to no rule which requires the presence of a particular number of commissioners at oral argument. We should also point out that no additional testimony was tendered at the time of argument.

Secondly, appellant contends that the commission affirmed the opinion of the referee and at the same time conceded that the referee had committed error. The referee concluded that the evidence was evenly balanced and "as a result the claimant failed to meet her burden of proof." The commission pointed out that the statement was legally erroneous, stating that when the evidence is evenly balanced the claimant is entitled to the benefit of the doubt. However, the commission did agree with the referee that the claim should be denied, but on the basis that appellant had not met her burden of proving a compensable injury arising in the course of her employment. The commission did agree that the referee's opinion set forth a fair summary of the testimony. To that summary of testimony the commission added what it considered to be many inconsistencies in appellant's evidence. Thus when the commission concluded its opinion with the statement, "the opinion of the referee is herewith affirmed," it is readily apparent that the conclusion of the referee that the claim should be denied was being affirmed.

The third facet of the last point for reversal is devoted to an analysis of the facts and circumstances which led the commission to conclude that appellant's evidence was less than credible.

For example, appellant testified that she had engaged in no gainful employment since the accident. Appellees established that she had in fact worked a week in Ft. Smith. Then again, the commission considered it difficult to believe that Mrs. Marts could have entered the plant, witnessed the accident, and assisted appellant to her feet without being seen by some other person. The commission also questioned how such an incident could have occurred when so many other workers were in the immediate vicinity, yet none of them saw appellant fall. The recited circumstances, along with others mentioned by the commission, were appropriately matters for evaluation in resolving the credibility of the witnesses.

Affirmed.