LAURETTA BENTLEY *v.* RALPH HENDERSON, D/B/A LEWIS BAR-B-Q AND GLENS FALLS INS. CO.

5-5607                                                    471 S.W. 2d 549

Opinion delivered October 18, 1971

*Q. Byrum Hurst* and *Harmon & Wallace,* for appellant.

*Wood, Smith & Schnipper,* for appellees.

FRANK HOLT, Justice. In this workmen's compensation case the appellant seeks dependency benefits as the

result of the death of her busband. The Commission affirmed the referee's denial of benefits and the Commission's action was affirmed by the circuit court. For reversal the appellant first contends that the court erred in denying benefits to the appellant because there is insufficient evidence to support the Commission's finding that the decedent's death was not causally connected with his employment.

Appellant's husband, 49 years of age, was an employee of the appellee, Lewis Bar-B-Q, as the cook and manager "off and on" for many years. On January 12, 1968, as he walked toward the kitchen, appellant noticed that her husband staggered and when she came to his assistance, his right arm drew "straight up" and he fell. Following this spasm, "his head went limp like he was dead." He was hospitalized and under treatment until January 22. On February 6 he was again admitted to the hospital and three days later a pneumonectomy operation was performed for carcinoma of the right lung. On February 21 he was released and he died on March 28, or about two and one-half months after collapsing at his place of employment. During this period he never returned to work. The death certificate shows that the immediate cause of his death was "bronchogenic carcinoma right lung metastatic to base of brain."

Appellant testified that before his collapse at the place of employment, her husband's health appeared to be good. He told her on the date he fell that he was going to the hospital where Dr. Bennett was going to treat a calcium deposit in his shoulder and that he also had chest pains and couldn't breathe. She stated that Dr. Bennett told her that her husband had suffered a cerebral spasm that was due to "sheer exhaustion for months." She said that her husband had other episodes like this but less severe and she thought he had hit his head when he fell and that she also fell on him.

A January 25, 1968 report by Dr. Bennett states in pertinent part: My diagnosis of Mr. Bentley's condition is a cerebral vasospasm; I discharged Mr. Bentley on

January 22, 1968, into the care of Dr. Sammons with no evidence of residual. The March 19 report of Dr. Bennett states: "Mr. Bentley, in February 1968, had a pneumonectomy right for bronchogenic carcinoma. He subsequently developed metastatic lesion on the base of the brain. He is hemiplegic on the right and developing paralysis left lower. He is not expected to live."

According to Dr. Sammons, he saw appellant's husband on January 18, 1968, and had the impression that appellant's husband had lung cancer and it was a distinct possibility that his convulsion was secondary to the spread of his tumor to the brain. Further, that an electroencephalogram run by Dr. Frank Padberg did not reveal any definite evidence of a localized lesion to account for Mr. Bentley's seizure. Dr. Sammons also said that on February 9 he performed a right pneumonectomy; Mr. Bentley made a relatively smooth recovery until March 6, 1968, when he began to have blurred vision and slurred speech similar to that associated with the original attack. He recommended that Bentley see Dr. Padberg relative to his cerebral symptoms; that he could not say absolutely, but thought the preponderance of evidence would suggest that Bentley died of cerebral metastasis from his carcinoma of the lung.

Dr. Padberg was not further consulted. His final report, dated January 29, 1968, stated: "The electroencephalogram did show some occasional spiking which was non-focal and there was no focal slowing or spiking noted in the record which would go along with any type of local lesion. * * * I told him that we did not point out or come up with any dramatic or particular findings from the studies we have concluded at this time which I thought would require further investigative measures at this time. I did tell him I wanted to see him again in 5-6 weeks or a few weeks after he had the therapy directed towards his chest, if this was the thing that was going to develop for him."

On appeal we give the testimony adduced its strongest probative force in support of the Commission's action and affirm if there is substantial evidence to sup-

port its finding. *St. Michael Hospital & Argonaut Ins. Co.* v. *Wright,* 250 Ark. 539, 465 S. W. 2d 904 (1971); *Farrelly Lake Co.* v. *Redden,* 235 Ark. 404, 360 S. W. 2d 187 (1962). Certainly we cannot say, in the case at bar, that there is no substantial evidence to support the finding of the Commission that the decedent's death did not arise out of and in the course of his employment.

The appellant next contends that the court erred in denying appellant's motion for remand because one referee conducted the hearing and another rendered the decision. Appellant asserts this is a denial of due process of law as guaranteed by our federal Constitution. We cannot agree. This issue was before us in *Lane Poultry Farms* v. *Wagoner,* 248 Ark. 661, 453 S. W. 2d 43 (1970). There we said: "[T]he findings of the referee àre of no significance either to the circuit court or to this court; resort is had on appeal only to the findings of the commission in testing the sufficiency of the evidence." The Commission is the trier of the facts and weighs the evidence.

Affirmed.