## NORTHWESTERN NATIONAL INSURANCE COMPANY AND BEARDEN ENTERPRISES v. MAVIS M. WEAST

5-6098                                              488 S.W. 2d 322

### Opinion delivered December 18, 1972

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellants.

*John T. Lavey,* for appellee.

FRANK HOLT, Justice. Appellee sustained a back injury which required surgery for ruptured discs. The Workman's Compensation Commission, in affirming a referee's opinion, found that appellee had not suffered her alleged compensable claim during her employment with

appellant Bearden Enterprises; also, that appellee's disability was the result of a non-compensable injury caused by appellee's fall in her yard. On appeal the Circuit Court held there was no substantial evidence to support the finding of the Commission and that appellants' counsel had waived the right to cross-examine claimant's treating physicians. Accordingly, a deposition of Dr. Freeland was expunged from the record. From the judgment of the Circuit Court reversing and remanding the cause back to the Commission comes this appeal. Appellants contend for reversal of that judgment that the finding and action of the Workman's Compensation Commission are supported by substantial evidence and, therefore, should be affirmed.

We first observe that the burden was on the appellee claimant to establish her claim for compensation by a preponderance of the evidence before the Commission and that the trial court and this court on appeal review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings which, like those of a jury, will be upheld if there is any substantial evidence to support the Commission's action. *Franks* v. *Amoco Chemical Co.,* 253 Ark. 120, 484 S.W. 2d 489 (1972), *Mayner* v. *Flyer Garment Co.,* 249 Ark. 384, 459 S.W. 2d 413 (1970), *Bentley* v. *Henderson,* 251 Ark. 203, 471 S.W. 2d 548 (1971), and *Dura Craft Boats* v. *Daugherty,* 253 Ark. 340, 485 S.W. 2d 739. Evidence was adduced that appellee claimant injured her back at work around 8 a.m. on December 8, 1969, when she slipped from a toilet seat. She felt a sharp pain and immediately reported her injury to her supervisor. She worked that day and on the following day her local physician, Dr. Freeland, examined and Xrayed her. He diagnosed her injury as acute sprain with muscle spasm in the lumbosacral area of the back. He prescribed conservative treatment and observed her again on December 10, 12, 17 and 19. The Xrays revealed no evidence of fracture or displacement. Appellee complained of soreness in her right leg as well as her back. According to her doctor, she was improved with each visit and he discharged her on December 19.

She returned to her job and worked on December 22 and 23. Upon returning from her work on December 23, appellee, as she was walking across her yard, fell face forward to the ground. Following this momentary fall, she was assisted by her husband into the house. The next day she did not work because of greater soreness about her back. After the Christmas holidays, she returned to work for a couple of weeks and then secured a leave-of-absence from her job for approximately two months because, according to her, of the problem with her back and the responsibility of taking care of her aging mother. Appellee, her co-workers, and other witnesses testified that she complained constantly after her December 8 back injury and, also, after her fall on December 23.

During her leave-of-absence, she saw her local physician, Dr. Freeland, on February 21 and 24. According to him, the nature of her complaint related to her menstrual irregularities, anxiety, and nervous tension. She did not complain or mention anything to him about her back injury or resulting pain on either of these visits. She returned to work on March 16. On April 4, she again saw Dr. Freeland and renewed her complaint about pain in her back. This time, however, she complained of pain in the left leg instead of the right leg. She did not tell him about the fall in her yard on December 23. On examination he found spasm of the muscles in the thigh and calf of her left leg and in the lumbosacral area of the back. He then diagnosed her condition as a possible ruptured disc and referred her to a specialist, Dr. Blackwell, who saw her on April 10 and hospitalized her for three weeks. During this time she responded to conservative treatment sufficiently to be discharged from the hospital. About a week later, since her pain persisted, Dr. Blackwell referred her to another specialist, Dr. Padberg. After performing certain tests, including a myelogram, he successfully performed surgery and repaired two large discal lesions in appellee's back.

As we have previously said, the burden was upon the claimant to convince the Commission by a preponderance of the evidence that her first injury was the cause

of her disability. We think what we said in *Brower Mfg. Co.* v. *Willis*, 252 Ark. 755, 480 S.W. 2d 950 (1972), is appropriate in the case at bar:

> "The commission made a fact finding upon a close question of fact by resolving all inferences against appellants and by giving the evidence the most liberal construction possible in favor of the claimant. The question is not whether the testimony would have supported a finding contrary to the one made, but whether it is substantial in support of the one made. Since we cannot say that reasonable minds could not reach the commission's conclusion from the evidence, that evidence was substantial."

See, also, *Wilson* v. *United Auto Workers*, 246 Ark. 1158, 441 S.W. 2d 475 (1969), and *Herman Wilson Lumber Co.* v. *Hughes*, 245 Ark. 168, 431 S.W.2d 487 (1968).

In the case at bar, the day following appellee's alleged compensable injury, her local physician, Dr. Freeland, examined her finding an acute sprain and muscle spasm in her lumbosacral back area. His Xrays showed no fractures or displacements. She responded to conservative treatments and after several visits to him, he discharged her as a patient. She immediately returned to work. During subsequent visits to Dr. Freeland, after returning to work and during her leave-of-absence, she made complaints about other physical conditions. She never mentioned to him anything about the second fall nor made a complaint that her back continued to cause her pain and suffering. Later when appellee did complain to him, she described the pain as existing in the left instead of the right leg. It could very well be that it is improbable that the second injury and not the first was the cause of claimant's back condition. However, it is not shown that it was a physical or medical impossibility for such to occur. Since there is substantial evidence, as we have so many times defined that phrase, to support the Commission's finding, the Circuit Court was without authority to reverse the Commission as fact finders.

Appellants next assert that the court erred in holding they had waived their right to cross-examine the treating physician. We agree. The medical reports of these doctors were submitted without objection approximately two months before the hearing. At the close of the hearing, before the referee, the appellants' attorney was asked if he wished to cross-examine any of the doctors. The attorney responded that he would like to have a few days to consider the matter. By a letter, ten days later, the attorney advised the referee his clients insisted on the right of cross-examination of the doctors since at the hearing appellee admitted to having suffered a fall in her front yard following the alleged compensable injury. This fall occurred four days after she was discharged by Dr. Freeland. This attorney advised that after reading the medical reports he could not find that the claimant had ever informed any of her doctors that she had fallen subsequent to the alleged compensable injury.

Appellants' requested cross-examination of Dr. Freeland was permitted over appellee's objection. Ark. Stat. Ann. § 81-1327 provides:

"In *** conducting a hearing, the Commission shall not be bound by technical or statuatory rules of evidence or by technical or formal rules of procedure *** but may *** conduct the hearing in such a manner as will best ascertain the rights of the parties.***"

Also, Rule 14 of the Commission provides that it is within the discretion of the hearing officer or the Commission to allow the introduction of medical reports of physicians even if proper notice is not given. The Commission had broad discretion with reference to the admission of evidence.

In the case at bar, we find no evidence of any abuse of discretion. Accordingly, the judgment of the Circuit Court is reversed and the cause remanded with directions to affirm the Commission's dismissal of appellee's claim.

Reversed and remanded.

JONES, J., dissents.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion in this case. There is no question that Mrs. Weast sustained a compensable injury to her back on December 8, 1969, when she fell in a twisted position wedged in-between a commode and the wall of a rest room where she worked. She experienced immediate back pain and she immediately reported the accident to her employer. The employer furnished medical treatment by Dr. Freeland following the injury and the injury was diagnosed initially as acute sprain and muscle spasms. Initial x-ray for bone fracture or displacement appeared negative and Mrs. Weast appeared to improve under conservative medical treatment until December 19 when Dr. Freeland discharged her as able to return to work. She did return to her job and worked on December 22 and 23 and continued to work intermittently until a ruptured disc was suspected by Dr. Freeland on April 14, 1970, and Mrs. Weast was referred to specialists in the field of neurosurgery. On this point Dr. Freeland testified as follows:

"A. That's right, and that's the time I sent her to Dr. Blackwell.

Q. Is it fair to state on April 4th her condition, at least insofar as her back was concerned, had considerably deteriorated, or at least to the point where, in your opinion, the indications of a ruptured disc were sufficient that you referred her to a specialist?

A. Well, she hadn't come along like she should, and I felt it was time for her to be seen; and if she did have such, for us to diagnostically work it up. You have to—*it must be borne in mind that for an accurate diagnosis of a ruptured disc that it requires a myelogram.*

Q. Yes; but there are—the leg raising tests and reflexes.

A. She continued to have pain with her left leg and thigh and calf and in her back. At that time she had pain. She had pain in her right leg, spasm in her thigh." (Emphasis added).

Dr. Blackwell also suspected a ruptured disc but he referred Mrs. Weast to Dr. Padberg, a neurosurgeon in Little Rock, and following an electromyographic work-up[1] Dr. Padberg diagnosed and surgically removed two disc lesions. Dr. Padberg reported as follows:

"This patient was operated upon at St. Vincent Infirmary on June 16, 1970. She was found to have a large, extruded intervertebral discal lision at L5-S1 on the left and a large, bulging lesion at L4-5 on the left."

The evidence is clear to me that following her injury on December 8 Mrs. Weast constantly complained of back pain on the job, and the pain she complained of was consistent in nature and only varied as to severity and intensity. It is almost common knowledge that ruptured discs do not show on ordinary x-rays, and this fact was recognized by Dr. Freeland as above set out.

As pointed out in the majority opinion, there was evidence in this case that when Mrs. Weast returned from the day's work on December 23, and after she had gotten out of the automobile in which she had ridden from work and was crossing her yard to her house, she fell forward to the ground. She got to her feet immediately, smiled and waved to the other passengers in the automobile and went into her house. She stayed home from work for a couple of days following the fall in her yard and testified that she was sorer following this fall than she had been.

---

[1] Mrs. Weast was allergic to iodine and a myelogram was not done.

The evidence does not reveal *what caused* Mrs. Weast to fall as she crossed her yard. The evidence did not show whether she stumbled over some object, stepped in a hole in her yard, or whether her leg simply gave way because of the pain Mrs. Weast said she had in her left leg and the muscle spasms in the calf and thigh Dr. Freeland said that he found in February. The evidence does not indicate whether the December 8 injury did or did not contribute to the second fall on December 23 but as I view the evidence, it certainly does not indicate that her second fall contributed to her injury, and that is the important question. Be that as it may, there is substantial evidence that Mrs. Weast continued to work for approximately two weeks following her fall in the yard. She took a two months' leave of absence from her work to be with her mother and returned to work on March 16. After working less than a month it was again necessary for her to seek medical attention for her injured back. Her back condition continued to deteriorate and she was eventually referred to a neurosurgeon who correctly diagnosed and surgically removed two large disc lesions, after which Mrs. Weast was relieved of the pain she had suffered since December 8, 1969.

There is no question that Mrs. Weast's symptoms following her injury on December 8, 1969, remained practically the same (changing only in severity) from December 8 until the two discs were removed. The majority say there was substantial evidence to support the Commission's finding that Mrs. Weast's disability was the result of a noncompensable injury sustained by her on December 23 when she fell in her front yard. I find no evidence at all that Mrs. Weast sustained any injury when she fell in her yard, certainly I find no substantial evidence that Mrs. Weast sustained the two ruptured discs as a result of her fall in the yard rather than when she fell in a twisted position wedged between the commode and the wall on December 8, 1969. If the two ruptured discs were causing all the pain Mrs. Weast suffered following her fall in the yard, there still remains the question without an answer as to what caused the same

type of pain in the same area following her injury on December 8.

I agree with the *first sentence* of the majority opinion where it is stated that the "Appellee sustained a back injury which required surgery for ruptured discs." The question then is whether Mrs. Weast sustained the injury in the course of her employment on December 8, 1969, when she fell in a twisted position wedged between the commode and wall, at which time she felt sharp pain in her back radiating down her left leg, or whether she received it on December 23, 1969, when she fell forward on her lawn after which she picked herself up, smiled and waved to her fellow-employees with whom she had ridden from work. As I view the evidence, the mere fact that Mrs. Weast failed to mention to the doctors that she fell in her yard is indicative to me that she attributed no significance to the fall in her yard. Certainly her failure to inform the doctors that she fell in her yard is no evidence that she sustained her ruptured discs when she fell in the yard.

It appears to me that in order to sustain the Commission's finding under the "substantial evidence rule" in this case, it would be necessary to eliminate the word "substantial" from the rule. Even if the word "substantial" were left out of the rule, I would still be unable to find any evidence that Mrs. Weast sustained her ruptured discs on December 23 rather than December 8. In my opinion this is exactly the type of case where the Commission should resolve the doubts in favor of the claimant. It is my impression from the overall record in this case that the Commission felt constrained to require strict medical proof, and medical proof only, as to which of the proven accidents or falls caused the ruptured discs in this case. It is my opinion that it was not essential that a doctor testify as to which of the accidents caused the ruptured discs. If a person falls in any twisted manner and injures or sprains her back with attending muscle spasms and pain radiating into the legs, and then about a week later simply falls down and the same symptoms continue until terminated by the removal of ruptured

discs, common sense dictates to me that the attending physician's lack of knowledge concerning the second accident is no evidence at all that the ruptured discs in fact occurred as a result of the second fall.

The doctors in this case experienced enough difficulty in finally determining that Mrs. Weast even had two ruptured discs. All of her physical symptoms of ruptured discs remained constant from her injury on December 8 until their surgical removal two months later, and to expect a doctor to say that the ruptures occurred on December 23 rather than on December 8 under the evidence in this case is, in my opinion, expecting entirely too much. As a matter of fact, however, I fail to find where any doctor ever hazarded a guess that Mrs. Weast sustained her ruptured discs on December 23.

I am simply unable to understand how the Commission arrived at its decision in this case so, consequently, I am unable to follow the reasoning of the majority in finding substantial evidence to sustain the Commission's award. I am of the opinion that the majority is brushing too lightly over the substantial nature and quality of *substantial* evidence.

Vol. 4, Ford on Evidence, p. 2760, § 549, offers the following definition of substantial evidence:

"Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture. *(People* v. *Managanaro,* 218 N.Y. 9)."

In vol. IX, Wigmore on Evidence, p. 299, § 2494, 3rd ed., the following appears:

*Perhaps the best statement of the test is this:* [*the proposition*] *cannot merely be, Is there evidence?* . . . The proposition seems to me to be this: Are there facts in evidence which if unanswered would

justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain?"

On page 300 of *Wagmore, supra,* appears footnote 18 quoting language as follows:

"'. . . substantial evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences.'"

I would affirm the judgment of the circuit court.