710

Lou Ella THOMPSON, widow of William
THOMPSON, deceased *v.* SELLERS & SONS
CONSTRUCTION COMPANY

CA 79-66 589 S.W. 2d 596

Opinion delivered November 7, 1979
Released for publication November 28, 1979

*Huey & Vittitow,* for appellant.

*Shackleford, Shackleford & Phillips, P.A.,* for appel-
lees.

JAMES H. PILKINTON, Judge. This is an appeal by Lou
Ella Thompson from a decision of the Arkansas Workers'
Compensation Commission denying her claim for benefits as
the widow of William Thompson, a deceased employee.

The question before us on appeal is not whether there is substantial evidence in the record to sustain Mrs. Thompson's claim; the issue is whether there is substantial evidence to sustain the Commission's findings in favor of the employer. *Tigue* v. *Caddo Minerals Co.*, 253 Ark. 1140, 491 S.W. 2d 574 (1973). *Arkansas Foundry Co.* v. *Cody*, 251 Ark. 57, 470 S.W. 2d 812 (1971). In arriving at an answer to this question we must give the evidence its strongest probative force in favor of the Commission's findings. *Tigue* v. *Caddo Minerals Co.*, supra. *Bentley* v. *Henderson*, 251 Ark. 203, 471 S.W. 2d 548 (1971).

William Thompson, age 58, was employed by Sellers & Sons Construction Company as a carpenter. He was working on a project at the Georgia-Pacific plant in Fordyce, Arkansas. The week preceding his death he had worked forty-eight hours, three eight hour days and two twelve hour days. The day of his death was a Wednesday, November 30, 1977. He had not worked the preceding four days. On the day he died Mr. Thompson commenced work at 7:00 a.m., setting forms in a drainage ditch, and was engaged at that task until about 10:00 a.m., when the superintendent directed Mr. Thompson to go inside to do other work.

While inside a building the decedent worked cutting holes in the ceiling. Mr. Thompson went to the plant lunchroom at noon and, at that time, the superintendent decided to halt the work for the rest of the day because of rain. The decedent then went with the superintendent to a tool shed. He got into the cab of a truck belonging to Georgia-Pacific, with other workers, to drive to where their automobiles were parked. After driving a short distance, Mr. Thompson commenced to gasp and fell across the passengers, apparently dead. He was pronounced dead on arrival at a local hospital by Dr. Jack Dobson.

A claim was filed before the Arkansas Workers' Compensation Commission by appellant, as widow of the decedent. Appellee denied that Mr. Thompson sustained an accidental injury arising out of and in the course of his employment which caused his death. A hearing was held before an Administrative Law Judge, at which time the deposition

of Dr. Jack Dobson was introduced into evidence, and the medical reports of Dr. Wayne Elliott, the pathologist who performed the post-mortem examination, were also introduced into evidence.

The Administrative Law Judge entered an order finding that the decedent did not sustain a compensable heart attack. The claim was denied and dismissed. On appeal to the full Commission, the Workers' Compensation Commission also denied and dismissed the claim finding that Mr. Thompson did not sustain a compensation injury.

The opinion of the two doctors appears in the record. Dr. Jack Dobson, a general practitioner at Fordyce, Arkansas, examined the body, but he had never seen Mr. Thompson during his lifetime. Dr. Dobson suggested an autopsy which was performed by Dr. Elliott, a pathologist at El Dorado, Arkansas. The autopsy report indicated that Mr. Thompson had suffered a heart attack some 14 years earlier. Dr. Elliott expressed an opinion that decedent died of his ischemic coronary disease, either as a result of arrhythmia or an infarction of sufficient severity to preclude historic changes prior to death. Dr. Dobson stated that he did not have an opinion as to whether the decedent died from arrhythmia or from an infarction. He could not answer the question as to whether arrhythmia relates to work effort. He said ''I can't answer that question because I'm just not aware of the relation between work and stress and the induction of arrhythmia.'' When asked whether the work or labor performed that day would cause or contribute to the death if the decedent did in fact die from a myocardial infarction, Dr. Dobson replied that ''any infarction in a person with 80% occlusion of the coronary arteries could be induced by labor.'' However, he went on to say: ''I think it could have, the amount of work he did that day. Again, I don't know whether it did.''

We have two doctors with slightly differing opinions regarding causal connection of the heart attack with the job in this case. Dr. Elliott says that there was nothing in his findings to indicate any causal connection to the work. Dr. Dobson states that it could be, but he simply does not know.

Dr. Dobson was reluctant to even admit a possibility of causal connection.

In denying the claim the Commission found that the medical evidence in this case does not establish that the work Mr. Thompson was doing on November 20, 1977, was a sole or a contributing cause of the fatal heart attack he suffered on that day. Therefore the claimant has not met the burden of proof required. After a careful review of the record, we are unable to say that there is no substantial evidence to support the Commission's findings.

The decision of the Commission is affirmed.