Paul JONES v. SCHEDULED SKYWAYS, INC., Employer; THE HARTFORD INSURANCE COMPANY, Insurance Carrier

CA 80-454          612 S.W. 2d 333

Court of Appeals of Arkansas
Opinion delivered March 11, 1981

*James W. Gallman*, for appellant.

*W. W. Bassett, Jr.*, for appellees.

Tom Glaze, Judge. This is an appeal by Paul Jones from a decision of the Arkansas Workers' Compensation Commission denying his claim for benefits. Jones was president, one of four owners, and chief executive officer of operations of Scheduled Skyways, Inc., (Skyways) from 1972 until November 12, 1978. On December 12, 1977, he suffered a myocardial infarction which he contended was produced, caused and aggravated by his employment with Skyways. After a period of recovery, he returned to Skyways to part-time employment on February 13, 1978. Jones resumed full-time employment on March 25, 1978, continuing to work under the same conditions as before his illness until November 12 when he was asked by the other owners to resign his position.

Dr. Robert McCollum, a general practitioner in Fayetteville, began treating Jones in 1974 for hypertension and his symptoms were brought under control with hypertensive medication. Jones continued to see Dr. McCollum, and when he suffered the infarction in 1977, McCollum was the physician who referred him to Washington General Hospital.

From the record it is clear that Jones' job involved the

type of mental stress that executives are subject to in times of business reversals. Skyways was not only a commuter airline, but also served as a Gulf fuel distributor, rented airplanes, provided outside maintenance on airplanes, was a Cessna dealer, operated a flight school and served as a federally regulated public airline. At the time of the heart attack, Jones was experiencing problems with maintenance of equipment, inflight engine failures, shortages of personnel, expansion of services to new cities, and profit losses. In addition, there were disputes between Jones and the other owners of Skyways, competition with other airlines and a high employee turnover rate. Jones further testified that he normally worked from 7:45 A.M. until 7:00 P.M. during the week, 10:00 A.M. to 4:00 P.M. on Saturdays, and long enough to process the mail on Sunday. He indicated that he enjoyed his work so much that he would have worked longer hours had it not been for his wife.

The Administrative Law Judge, in an opinion filed April 1, 1980, found that Jones sustained an accidental injury on December 12, 1977, which arose out of and in the course of his employment, and the Judge awarded benefits from December 12, 1977, until February 13, 1978, and from November 12, 1978, until some date yet to be determined. However, the Workers' Compensation Commission, after reviewing the medical reports and depositions and the record in this case, denied the compensation benefits requested.

It is a well established principle of law that we must affirm if we find any substantial evidence to support the Commission's ruling. *Taylor* v. *B. J. McAdams*, 270 Ark. 707, 606 S.W. 2d 141 (Ark. App. 1980); *Hammer* v. *Intermed Northwest*, 270 Ark. 262, 603 S.W. 2d 913 (Ark. App. 1980); *Thompson* v. *Sellers & Sons Construction Company*, 267 Ark. 710, 589 S.W. 2d 596 (Ark. App. 1979). The duty of the Workers' Compensation Commission is to make a finding in accordance with the preponderance of the evidence and not on whether there is any substantial evidence to support the findings of the Administrative Law Judge. *Potlatch Forests, Inc.* v. *Smith*, 237 Ark. 468, 374 S.W. 2d 166 (1964); *Allied Telephone Company* v. *Rhodes*, 248 Ark. 677, 454

S.W. 2d 93 (1970); *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W. 2d 360 (1979). In a Workers' Compensation case, the court must view and interpret the evidence, and all reasonable inferences deducible therefrom, in the light most favorable to the findings of the Commission and give the testimony its strongest probative force in favor of the action of the Commission, whether it favored the claimant or the employer. *Clark* v. *Peabody Testing Service, supra; Thompson* v. *Sellers & Sons Construction Company, supra.*

In this case we have conflicting opinions of the two doctors deposed by the parties. First, Dr. McCollum found a causal connection between the mental stress and worry that Jones experienced in connection with the job as president of Skyways and the hypertension which McCollum felt contributed to the infarction. Secondly, Dr. Harrison Butler, a cardiologist, reviewed all the medical records involved, and it was his opinion that there was not a causal relationship between the employment and the injury. Both doctors testified at length regarding how they arrived at their respective but differing opinions.

Dr. McCollum admitted that the cause of essential hypertension is simply medically unknown; that many types of work aggravate pre-existing hypertensive conditions to the point that they become a problem, but that they certainly do not always result in myocardial infarction. Here, it was only after the infarction that McCollum advised Jones to remove himself from his employment. This recommendation was made in May, 1978, five months after Jones' heart problem. It was Dr. McCollum's opinion that Jones was a particular individual who would have difficulty handling stress, and that his job was aggravating his hypertension which in turn aggravated his heart condition.

Dr. Butler, on the other hand, found no substantial reason that would indicate that Jones' employment had a direct cause and effect relationship upon his myocardial infarction. Butler stated that essential hypertension was only one of many risk factors which may influence the development of heart disease, citing, for example, that one's diet, heredity, salt intake, physical activity and obesity can

have an effect in the development of essential hypertension. Dr. Butler did not disagree with Dr. McCollum's diagnosis of essential hypertension, but stated that emotional stress was most often associated with labile hypertension, which is indicated by elevated pressure during times of excitement or fright, and a normal pressure during times of relative calm.

It is the duty of the Commission to weigh medical evidence as it does any other evidence. We have held that when medical testimony is conflicting, the resolution of the conflict is a question of fact for the Commission. When the Commission chooses to accept the testimony of one physician in such cases, the court is powerless to reverse the decision. *Barksdale Lumber Company* v. *McAnally*, 262 Ark. 379, 557 S.W. 2d 868 (1977). In *Barksdale*, McAnally suffered a heart attack and died while at work. He was being treated by a cardiologist in Hot Springs, and the cardiologist rendered an opinion that the employment did not precipitate the heart attack, aggravate his condition or cause his death. Another doctor, a general practitioner, reviewed the medical records, and opined that the work did cause or contribute to McAnally's death. The Commission allowed the claim for death benefits, and the Supreme Court refused to reverse. The court found that the general practitioner's opinion would support an award, and the relative qualifications of the doctors and the fact that one had not examined the deceased went to the weight of the testimony and not to its probative value. Further, the court held that where a medical expert witness gives an opinion based upon facts established by the record upon a matter recognized as a proper subject of expert opinion, it is ordinarily sufficient to sustain an award unless impeached to such an extent as to have no probative value.

We are not at liberty to weigh the credibility of witnesses. Thus, where doctors express conflicting views on the issue of whether a person's work caused or aggravated a heart attack, the issue of credibility is one for the Commission. *Dena Construction Company* v. *Herndon*, 264 Ark. 791, 575 S.W. 2d 155 (1979).

We are unable to say that fair-minded men could not

reach the conclusion upon which the Commission denied this claim. Therefore, we hold that there was sufficient evidence to support the Commission's determination.

Counsel for Jones raised a second issue in his reply brief, contending that Jones failed to receive a fair hearing before the Commission. He argues that at the time the Commission decided against Jones, it was composed of Cowne, a management or employer representative; Clark, a labor representative; and Tatum, an impartial representative and chairman.[1] Cowne and Tatum rendered the majority opinion and Clark dissented. Later, Cowne left the Commission, Tatum assumed the management or employer position, Rotenberry became chairman and Clark remained in his same position. Apparently, Jones believes that Tatum's change from the chairman's position to the employer's position indicates that he unfairly decided against Jones. There is nothing in the record which supports this contention, and the law is well settled that public officers are presumed to act lawfully, sincerely and in good faith in the execution of their duties. *Arkansas Pollution Control Commission* v. *Coyne, et al*, 252 Ark. 792, 481 S.W. 2d 322 (1972).

We affirm the decision of the Commission.

Affirmed.

---

[1]Ark. Stat. Ann. § 81-1342 (Repl. 1976) does not employ the terminology "impartial representative" but rather provides that the third member shall be the chairman of the Commission who shall have been engaged in active practice of law in the State for not less than five years next preceding his appointment.