## Denver FLETCHER *v.* FARM BUREAU INSURANCE COMPANY

CA 83-266                           661 S.W.2d 431

### Court of Appeals of Arkansas
Division II
Opinion delivered November 30, 1983

*Odom, Elliott, Lee & Martin,* by: *Mark L. Martin,* for appellant.

*Friday, Eldredge & Clark,* by: *Frederick S. Ursery,* for appellee.

TOM GLAZE, Judge. Appellant appeals the Workers' Compensation Commission decision denying him benefits. He asserts the Commission erred (1) in finding his injury did not arise out of and in the course of his employment, and (2) in denying his petition to introduce new evidence. We disagree and therefore affirm the Commission's decision.

Appellant's basic claim is that he was exposed to large amounts of formaldehyde from the wall paneling in his new office into which he moved on September 1, 1975, and that exposure led to allergy problems which have rendered him totally and permanently disabled. He denied having any allergies or symptoms prior to moving into the new Farm Bureau office. Upon medical advice, appellant left his office in August, 1978, and continued his work as an insurance adjuster for appellee at his home. He either quit or was terminated from his employment in August, 1979, and has not worked since.

In a seventeen-page opinion, the Administrative Law Judge tracked the relevant evidence in detail and concluded it was in sharp conflict concerning the origin and cause of appellant's allergy problems. For example, appellant never recalled being treated for allergies prior to September 1, 1975 (when he moved to his new office), but his family physician testified that on April 28, 1975, he had treated appellant for an allergic reaction involving post-nasal drainage. In addition, the medical testimony offered by appellant and appellees was in sharp contrast. Dr. William Rea, testifying on appellant's behalf, concluded that appellant's exposure to the formaldehyde fumes in his office damaged his immune system so that he now is highly sensitive to almost everything in the environment. Dr. Rea's conclusion was largely contradicted by the other doctors testifying in this case. For instance, Dr. Edwin L. Harper noted appellant's treatment for allergy problems prior to the formaldehyde exposure, which lead him to believe other allergies — besides the formaldehyde irritant — had contributed to appellant's condition. In fact, Harper believed any of appellant's

symptoms caused by formaldehyde would have ended six months after he left his office in August, 1978. Another doctor, Kelsey Caplinger, whose medical practice is confined to allergy and immunology, was critical of Dr. Rea's testing protocol and referred to Rea's treatment of appellant as "unconventional." Dr. Caplinger concluded that appellant's condition was not produced by formaldehyde exposure. Other doctors testified concerning their treatment or evaluation of appellant, and none of their testimonies established that appellant's symptomology or condition was caused by formaldehyde exposure.

Of course, the Commission's duty is to weigh medical evidence as it does other evidence. We have held that when medical testimony is conflicting, the resolution of the conflict is a question for the Commission. When the Commission chooses to accept the testimony of one physician in such cases, the court is powerless to reverse the decision. *Jones* v. *Scheduled Skyways, Inc.,* 1 Ark. App. 44, 612 S.W.2d 333 (1981). If the Commission had accepted Dr. Rea's opinion and believed appellant's version of what caused his condition, the Commission certainly could have held appellant's claim work-related and compensable. Instead, the Commission viewed Dr. Rea's testimony as lacking in credibility and surmised from the other evidence presented that appellant's symptoms arose out of an allergy condition he had suffered prior to his exposure to formaldehyde. In sum, we believe the evidence substantially supports the Commission's finding that appellant failed to show by the preponderance of credible evidence that his condition was work-related.

Appellant's second contention for reversal is that the Commission erred in failing to allow the introduction of new evidence to rebut evidence (an exhibit) placed into the record by the Administrative Law Judge after the final hearing was held in this cause on July 2, 1981. The case was actually submitted to the Law Judge sometime after December 10, 1981. The exhibit in question is a regulation, 29 C.F.R. § 1910.1000, Table Z-2 (July 1, 1981), which reflects the OSHA ceiling levels for formaldehyde exposure. On his appeal to the Commission, appellant sought to introduce

into evidence an M.I.T. study on the relationship between formaldehyde and cancer. The Commission ruled the study was inadmissible, and appellant duly proffered it, stating the study rebutted and discredited the OSHA levels set out in the C.F.R. regulation admitted into evidence by the Administrative Law Judge. We agree with the Commission, and in doing so, we first observe that appellant simply was not prejudiced by the admission of the C.F.R. regulation, and consequently the regulation in no way served as a basis to admit the M.I.T. study as "rebuttal evidence." The OSHA ceiling levels for formaldehyde — to which appellant takes exception — is not only set out in the C.F.R. regulation admitted by the Law Judge as an exhibit; that same maximum formaldehyde level information was fully set forth in a National Institute for Occupational Safety and Health (NIOSH) report that had been introduced by the appellant *before* this case was submitted to the Law Judge for decision.[1] In brief, the C.F.R. regulation admitted by the Law Judge served as the citation of authority for the maximum formaldehyde level information contained in the NIOSH report which already was made a part of the record *by the appellant.*

Although appellant does not argue that the M.I.T. study is newly discovered evidence, we dispose of that issue as a possibility for admission as well. Both the NIOSH report and M.I.T. study were dated April, 1981; however, the NIOSH report was timely submitted into evidence prior to submission of the case to the Law Judge, but the M.I.T. study was not. Clearly, the study was neither newly discovered evidence nor admissible as such.

In sum, the C.F.R. regulation was made a part of the record in this case by the appellant's introduction of the NIOSH report, and its admission into evidence occurred prior to the Law Judge's taking this matter under submission. We fail to see how appellant can complain of the

---

[1]Appellee argues this case was submitted to the Administrative Law Judge in January, 1982. The record reveals the case was submitted at least after December 10, 1981, which is the date Dr. Caplinger was deposed by the parties; the NIOSH report was introduced at this same time.

Law Judge's making the C.F.R. regulation a separate exhibit to the record when that regulation was contained in and was an integral part of the NIOSH report which he had introduced earlier in the proceeding.

We affirm.

Affirmed.

MAYFIELD, C.J., and COOPER, J., agree.