WRIGHT CONTRACTING CO., Employer
and INSURANCE COMPANY OF NORTH
AMERICA, Insurance Carrier *v.*
Louis RANDALL, Employee

CA 84-149

676 S.W.2d 750

Court of Appeals of Arkansas
Division II
Opinion delivered October 10, 1984

*Walter A. Murray,* for appellant.

No response by appellee.

H. WILLIAM ALLEN, Special Judge. This is an appeal of a decision of the Workers' Compensation Commission ordering a change of physicians for the appellee pursuant to Ark. Stat. Ann. § 81-1311 (Supp. 1983). The appellant employer contends on appeal that the Commission's opinion is not supported by substantial evidence and that the award is contrary to Arkansas law. We affirm the Commission's decision.

The pertinent facts are undisputed. The appellee, Louis Randall, suffered a compensable injury to his right eye on April 11, 1983, while he was operating a cleaning machine for appellant Wright Contracting Company. The appellee's foreman took him to Doctor's Hospital where Dr. A. Henry Thomas, an ophthalmologist, performed surgery to remove a small piece of metal from appellee's eye. As a result of his injury, appellee was paid temporary total disability from April 12 through April 26, 1983, totalling $285.73 and medical expenses totalling $2,128.29. On April 27, 1983, Dr. Thomas released the appellee to return to work and to resume normal work activities. In a report dated May 18, 1983, Dr. Thomas noted that appellee had 20/20 vision in his right eye.

A hearing was conducted before an administrative law judge on August 2, 1983, to consider the appellee's request for a change of physicians. The appellant contended that because the appellee had been released by his doctor to return to work, and had, in fact, returned to work, he was no longer within his healing period and was therefore not entitled to a change of physicians. The appellee testified that he was treated for his injury in the emergency room where his foreman took him after his injury, that the treating physician called in Dr. Thomas, and that appellee was never questioned about his preference of physicians.

The appellee said that after the treatment he continued to experience sensitivity to light and that he could not see in bright lights. In addition, he testified:

> And of the mornings. . .for the first four (4) or five (5) hours I'd have a lot of trouble seeing. My eye would run constantly. And my pupil. . .when I'd turn my head my left eye would focus on something and my right eye would try to tag along behind it.
>
> . . . .
>
> That's what problem I have. I still have trouble with the light hurting my eye and it runs all the time. And my eye is not going as fast as the other one when I focus, when I try to focus on something.

The appellee testified that his problem with light sensitivity occurred in sunlight or when he watched television. He said that even the white of a newspaper caused his eye to water when he attempted to read. He stated that he had never experienced eye problems of any nature until after his injury.

On cross-examination, the appellee testified that he did return to work after Dr. Thomas released him, and that appellant had dismissed him the day he returned to work. He was working for another construction company at the time of the hearing, and had missed no work because of his eye.

Between the time of the hearing and the time the administrative law judge rendered an opinion, the appellee moved to Wichita, Kansas, and he requested that he be examined by a physician there. The administrative law judge filed his opinion on November 14, 1983, ruling that appellee was entitled to an independent evaluation by an ophthalmologist in Wichita, Kansas. The law judge also stated in his decision that if the choice of physicians became a point of controversy, he would appoint a specific doctor. The Commission affirmed the decision of the law judge.

Appellant's first point for reversal is that the Commission's decision is contrary to the facts of the case and is not supported by substantial evidence. Appellant contends that appellee was "provided with adequate medical care" to satisfy the "reasonably necessary" prescription of the Workers' Compensation Law. Ark. Stat. Ann. § 81-1311 (Supp. 1983). Appellant also contends that the medical reports, coupled with the fact that claimant has missed no work because of his eye injury, contradicts his testimony that he needs further medical evaluation. Appellant contends the medical reports show that appellee had "normal vision," and that the only contradictory evidence is the "uncorroborated and interested testimony of the [a]ppellee himself."

This Court's review of workers' compensation cases is well established. We must affirm if we find substantial evidence to support the Commission's ruling. *Jones* v. *Scheduled Skyways, Inc.*, 1 Ark. App. 44, 612 S.W.2d 333 (1981). We must view and interpret the evidence, and all reasonable inferences deducible therefrom, in the light most favorable to the findings of the Commission and give the testimony its strongest probative force in favor of the action of the Commission, whether if favored the claimant or the employer. *Id.* The issue of credibility is one for the commission; we are not at liberty to weigh the credibility of witnesses. *Id.* It is the duty of the Commission to weigh medical evidence as it does any other evidence. *Id.*

In the instant case, the Commission apparently believed the appellee's testimony about his difficulties with his right eye after the injury, despite a medical report that he has 20/20 vision in his right eye. Although appellant argues that it has provided all "reasonable and necessary" medical treatment the law requires, Ark. Stat. Ann. § 81-1311 (Supp. 1983), the Commission determined otherwise in ordering an examination by another ophthalmologist. What constitutes reasonable and necessary treatment under the statute is a fact question for the Commission. *See, e.g., Meadors Lumber Co.* v. *Wysong*, 262 Ark. 425, 557 S.W.2d 395 (1977); *Pine Bluff Parks and Recreation* v. *Porter*, 6 Ark. App. 154, 639 S.W.2d 363

(1982). We believe substantial evidence supports the Commission's determination.

Appellant's second point for reversal is that the Commission's award is contrary to Arkansas law because appellee's healing period has ended. Under the present law and the facts of this case, appellee's healing period is of no significance. The pertinent section of the Workers' Compensation Law provides:

> If the employee selects a physician, the Commission shall not authorize a change of physician unless the employee first establishes to the satisfaction of the Commission that there is a compelling reason or circumstance justifying a change. If the employer selects a physician, the claimant may petition the Commission one time only for a change of physician, and if the Commission approves the change, with or without a hearing, the Commission shall determine the second physician, and shall not be bound by recommendations of claimant or respondent. . . .Treatment or services furnished or prescribed by any physician other than the ones selected according to the foregoing. . .shall be at the claimant's expense.

Ark. Stat. Ann. § 81-1311 (Supp. 1983).

Appellant does not dispute that appellee had no initial choice of physicians at the time of the injury. The emergency room physician called in Dr. Thomas, whom appellee had never met, and Dr. Thomas performed surgery that same day. The statutory provision set out above provides for a "one time only" petition for a change of physician when the employer has initially selected the physician. The statute also provides for a change even when an employee has selected the physician, provided the Commission finds a compelling reason or circumstance to justify a change. The Commission has authority to approve a change under either of those circumstances. Problems have arisen when claimants have changed physicians and then attempted to secure the Commission's approval after the fact. Recent changes in the law have

resulted in a limitation on the Commission's discretion to *retroactively* approve a change of physicians. *See American Transportation Co.* v. *Payne,* 10 Ark. App. 56, 661 S.W.2d 418 (1983); *Continental Grain Co.* v. *Miller,* 9 Ark. App. 317, 659 S.W.2d 517 (1983). The cases upon which appellant relies are simply not applicable to the instant case. Most of them were decided under prior law, when a claimant's healing period *was* a determining factor in approving a change of physician. *See* Ark. Stat. Ann. § 81-1311 (Repl. 1976). Appellant has cited the following for the proposition that even under the law presently in effect, a claimant's healing period is or ought to be a valid consideration in deciding a change of physician issue: *Continental Grain Co.* v. *Miller, supra; Union Medical Center* v. *Brumley,* 4 Ark. App. 370, 631 S.W.2d 618 (1982); *Mad Butcher, Inc.* v. *Parker,* 4 Ark. App. 124, 628 S.W.2d 582 (1982); and *Bradford* v. *Timex Corp.,* 270 Ark. 184, 604 S.W.2d 472 (Ark. App. 1980). However, all of those cases were decided under our prior law, even though some of the decisions were handed down by this Court after the effective date of the current law. Appellant also cited *Popeye's Famous Fried Chicken* v. *Willis,* 7 Ark. App. 167, 646 S.W.2d 17 (1983), but it has no bearing on the instant case because it involved the issue whether Act 290 of 1981, which amended § 81-1311 to its present form, had retroactive application. Of course, no question exists here over what law applied. *Willis* did involve a claimant who applied to the Commission for a change of physician in advance of actually consulting another doctor, as did the appellee in the instant case, and in *Willis* we affirmed the Commission's approval of that change. In *American Transportation Co.* v. *Payne, supra,* the current law was applied, but the facts are distinguishable from the facts at bar. The *Payne* case involved a claimant who applied to the Commission for approval after she already had been treated by a physician of her choice. We noted that under the present law, the Commission no longer has the broad discretion it once had to *retroactively* approve change of physicians, and that, absent compliance with § 81-1311, the employer is not liable for a new physician's services.

In the instant case, the appellee clearly complied with

the dictates of § 81-1311 in applying for a change of physician in advance of actually being treated by a doctor of his choice. The Commission acted within its discretion in approving that request. Therefore, we affirm.

Affirmed.

CRACRAFT, C.J., and CLONINGER, J., agree.